UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BADEN SPORTS, INC.,

Plaintiff,

v.

KABUSHIKI KAISHA MOLTEN (DBA MOLTEN CORPORATION) AND MOLTEN U.S.A., INC.,

Defendants.

No. C06-0210P

ORDER DENYING MOTION TO DISMISS BASED ON LACK OF PERSONAL JURISDICTION AND INAPPROPRIATE VENUE

This matter comes before the Court on Defendant Kabushiki Kaisha Molten's Motion to dismiss for lack of personal jurisdiction and inappropriate venue. (Dkt. No. 43). Plaintiff, a Washington sports ball company, brought this suit for patent infringement and unfair competition against the sporting goods company Kabushiki Kaisha Molten (DBA Molten Corporation) ("Molten Japan") and its wholly-owned subsidiary, Molten U.S.A. Molten Japan brought this motion on the grounds that Molten Japan has no contacts with the state of Washington. Baden contends that this Court has personal jurisdiction over Molten Japan based on the contacts of its subsidiary, Molten U.S.A. Having reviewed the papers and pleadings submitted by the parties, the Court DENIES the motion to dismiss.

**BACKGROUND**

Defendant Molten Japan is a Japanese sports ball company with a principal place of business in Hiroshima, Japan. (Nishihara Decl. ¶ 7). Molten Japan has no offices, employees, sales agents, or assets in Washington. (Id.). Molten Japan makes no direct sales to consumers in Washington. (Id.).

Molten Japan has not shipped any products directly to Washington residents or directed any marketing or advertising efforts towards Washington residents. (Id.)

Molten Japan sells its products throughout the United States through its wholly owned subsidiary, Molten U.S.A. (Id. ¶ 8). Specifically, as explained in the declaration of Molten U.S.A.'s chairman and CEO:

> Molten [Japan] has a license agreement with Molten U.S.A. that allows Molten U.S.A.(licensee) to purchase "Molten" brand goods from Molten Thailand Company, Inc. and other Asian suppliers. The license also allows Molten U.S.A. to sell such goods to its customers, at its discretion, within the scope of the rights written in the agreement. Molten U.S.A pays a percentage of royalties to Molten [Japan] (licensor) on its U.S. sales but Molten Japan plays no role in Molten U.S.A.'s sales of "Molten" brand products. As per the above-mentioned agreement, Molten U.S.A. purchases basketballs from Molten Thailand Company, Inc. Molten U.S.A. purchases digital scoreboards and whistles periodically from Molten Corporation.

(Id.). Defendant Molten U.S.A. is a wholly owned subsidiary of Molten Japan and has its principal place of business in Reno, Nevada. (Id. ¶ 8; Dawson Decl. ¶ 2).

Baden has sued Molten Japan and Molten U.S.A. for patent infringement and unfair competition under the Lanham Act and the Washington Consumer Protection Act. Baden alleges that Molten[1] recently introduced several basketball models into the United States that infringe on two of Baden's patents. (Second Amended Complaint ¶ 15). Baden also alleges that Molten is misrepresenting certain qualities of Molten's basketball design in a way that violates section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Molten Japan has moved to dismiss under Fed. R. Civ. P. 12(b)(2) and (3) for lack of personal jurisdiction and improper venue.

## ANALYSIS

### A. Standard on Motion to Dismiss for Lack of Personal Jurisdiction

Federal Circuit Law governs personal jurisdiction issues in patent-related actions. Electronics for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1348 (Fed. Cir. 2003). "[W]here the district court's disposition as to the personal jurisdictional question is based on affidavits and other written materials

---

[1] When referring simultaneously to both Molten Japan and Molten U.S.A., the Court will refer to "Molten" or "Defendants".

in the absence of an evidentiary hearing, a plaintiff need only to make a prima facie showing that defendants are subject to personal jurisdiction." Id. at 1349. "In the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." While a plaintiff carries the burden of showing minimum contacts, upon that showing, a defendant must prove that the exercise of jurisdiction is unreasonable. Id. at 1350.

**B. Specific Jurisdiction**

Baden does not assert general jurisdiction in this case. Thus, the Court only considers whether specific jurisdiction over Molten Japan is proper. "Determining whether specific personal jurisdiction over a nonresident defendant is proper entails two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of jurisdiction would be inconsistent with due process." Id. Washington State's long-arm statue extends jurisdiction to the limits of federal due process. Chan v. Society Expeditions, Inc., 39 F.3d 1398, 1405 (9th Cir. 1994). Therefore, the analysis turns on whether the exercise of jurisdiction is consistent with due process. See Amana Refrigeration, Inc. v. Quadlux, Inc. 172 F.3d 852, 857 (Fed. Cir. 1999). "The due process analysis requires the nonresident defendant to have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Pennington Seed, Inc. v. Produce Exch. No. 229, 457 F.3d 1334, 1344 (Fed. Cir. 2006) (internal quotation marks omitted). "A court's consideration of minimum contacts generally involves three inquiries: whether (1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities with the forum state, and (3) assertion of personal jurisdiction is reasonable and fair. Id. (internal quotation marks omitted). Application of these three factors to the facts of this case establishes that this Court's jurisdiction over Molten Japan is proper.

**1. Activities Purposely Directed to the Forum**

This Court's jurisdiction over Molten Japan is based on the contacts of its subsidiary Molten U.S.A. with the forum state. The parent company located in Japan is subject to jurisdiction in Washington by attributing the Nevada subsidiary's contacts with the forum to the parent.

This Court has previously considered whether the contacts of a subsidiary may be imputed to the parent for the purposes of establishing personal jurisdiction. See IP Innovation, L.L.C. v. RealNetworks, Inc., 310 F. Supp. 2d 1209, 1212 (W.D. Wash. 2004). The Court repeats here its interpretation of the relevant case law governing the applicable agency doctrine:

> A subsidiary company's contacts with the forum state may be imputed to the parent company where the subsidiary was established for, or is engaged in, activities that the parent would have to undertake if not for the subsidiary's involvement. Dainippon Screen Manufacturing Co., Ltd. v. CFMT, Inc., 142 F.3d 1266, 1271 (Fed. Cir. 1998). Dainippon involved a suit by an international company seeking a declaratory judgement that its products did not infringe a patent held by CFMT, a wholly owned subsidiary of CFM, the company that sold the patented products in the United States. CFMT, the subsidiary being sued, argued that it was not subject to personal jurisdiction in California because it had no employees, offices, or agents in that state and had never sold products in that state. The court held that "the parent subsidiary relationship between CFM and CFMT [led] to the conclusion that the imposition of personal jurisdiction [was] 'reasonable and fair,' one of the due process factors." Id. at 1271. Further, the court chided CFM's position that by establishing CFMT as a holding company for its intellectual property it could take actions without becoming defendant to a declaratory judgement action. Id.
>
> Though Federal Circuit case law on this issue is minimal, the Ninth Circuit has reached similar conclusions that jurisdiction over an international company can be established through minimum contacts in the forum by a subsidiary that was "either established for, or is engaged in activities that, but for the existence of the subsidiary, the parent would have to undertake itself." Chan v. Society Expeditions, Inc., 39 F.3d 1398, 1405 n.9 (9th Cir. 1994); Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 422-23 (9th Cir. 1977).

Id. at 1212-13; see also Doe v. Unocal Corp., 248 F.3d 915, 928 (9th Cir. 2001) ("The agency test is satisfied by a showing that the subsidiary functions as the parent corporation's representative in that it performs services that are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.") (internal quotation marks omitted).

In this case, the Court concludes that the agency test has been satisfied. Particularly revealing is Molten U.S.A.'s statement on its website that Molten U.S.A. was created for the purpose of selling Molten brand products in the United States:

> Founded in 1958 with its worldwide headquarters in Hiroshima, Japan, Molten is the world's largest ball and sports equipment manufacturer. Molten U.S.A., Inc. was established in 1983 to bring these quality sports balls to the United States marketplace.

(Kaser Decl. at 52, Exh. H). On that same webpage, Molten U.S.A. describes Molten's widespread presence in the world basketball market: Molten has been the official basketball for six Olympic Games and has also been the official ball for the International Basketball Federation for the past twenty-five years, including the Men's and Women's World Basketball Championship held in Indianapolis, Indiana in 2002. As the "world's largest ball and sports equipment manufacturer," it is reasonable to believe that if Molten U.S.A. never existed, Molten Japan would have distributed its goods to the United States market itself. The agency test is therefore satisfied and the Court will consider the contacts of Molten U.S.A. in performing its analysis regarding personal jurisdiction over Molten Japan.

Molten U.S.A. has sufficient contacts with Washington to support specific jurisdiction. The Court finds that Molten U.S.A. has the following contacts with the forum state:

(1) Molten U.S.A. has relationships and accounts with "team dealers" in Washington. (Dawson Decl. ¶ 9; Lambert Decl. ¶¶ 2, 5). A "team dealer" is a "middleman" through whom Molten U.S.A. sells Molten products to coaches, schools, recreation departments, teams, and individuals. (Dawson Decl. ¶7).

(2) Molten U.S.A. catalogues containing the allegedly infringing balls for sale are sent to team dealers in Washington.[2]

---

[2] The Court notes that Baden alleges in its opposition brief that Molten catalogues containing infringing balls for sale are sent to Team Dealers in Washington. In its reply, Molten Japan does not refute this statement except to clarify that the catalogues are Molten U.S.A. catalogues, as opposed to Molten Japan catalogues. The declaration of Melissa Dawson, president of Molten U.S.A., explains that sporting goods companies, like Molten, typically present their product line to Team Dealer salespeople, hand out catalogs and price lists, and assist the salespeople with calls or e-mails to the end consumers. (Dawson Decl. ¶ 7).

(3) On May 13, 2005, a Molten U.S.A. employee contacted the athletic director for North Kitsap High School in Washington via email and stated that "Molten U.S.A. would like to become the ball provider for *North Kitsap High School*." (Kaser Decl. at 87-88, Exh. Q).

(4) Molten basketballs are available for purchase on internet websites and may be purchased by Washington consumers. (Kaser Decl., Exhs. B (G.I. Joes) & L (Amazon.com)).

(5) In August 2006, Athletic Supply, a Team Dealer in Redmond, Washington, ordered 45 Molten basketballs from Molten U.S.A. (Lambert Decl. ¶ 5). Those basketballs were shipped to Athletic Supply on August 17, 2006. (Id. ¶ 6). Athletic Supply has since placed some of those Molten basketballs on the retail floor. (Id.).[3]

Through these contacts of Molten U.S.A., Molten Japan has purposefully directed its activities at residents of the state of Washington.[4]

The Court also notes that Molten U.S.A. also has other, more generalized contacts with the state of Washington. Molten U.S.A. is the official sponsor of the Puget Sound Region of U.S.A. Volleyball. (Kaser Decl. at 74, Exh. O). The Puget Sound Region office is in Seattle, Washington. (Id. at 75) Through that sponsorship, Molten U.S.A. has offered Puget Sound clubs special pricing on game volleyballs. (Id. at 82).

---

[3] Molten suggests in its briefing that the Court should not consider this contact because it occurred after Baden filed its First Amended Complaint. (See Mot. at 8, n.1). But the Federal Circuit has held that a court may consider evidence of contacts with the forum occurring subsequent to the events giving rise to the patent infringement litigation. See Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1563 (Fed. Cir. 1994). As the Beverly Hills court explained, in contrast to a case involving a single tort, where subsequent contacts would have no relation to the cause of action, "[i]n a case involving a continuous tort, it would be arbitrary to identify a single moment after which defendant's contacts with the forum necessarily become irrelevant to the issue of specific jurisdiction." Id.

[4] Because the Court concludes that minimum contacts are established through the contacts of Molten Japan's agent, Molten U.S.A., the Court does not consider whether Molten Japan places its infringing basketballs into the stream of commerce with one ultimate target being consumers in Washington. (See Resp. at 14-15; Reply at 10).

**2. A claim arising out of or relating to Molten's activities in the Forum**

Baden's claims arise out of and relate to the activities of Molten Japan (through its agent, Molten U.S.A.) with the forum state. The advertising, offering for sale, and sale of the allegedly infringing basketballs in Washington give rise to Baden's claims for patent infringement and unfair competition. See 35 U.S.C. § 271(a) ("[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."); 15 U.S.C. § 1125(a) (creating cause of action against any person who falsely advertises or makes a false association regarding a good or service).

**3. Exercise of Personal Jurisdiction over Molten Japan is Reasonable**

The presence of minimum contacts does not end the analysis. Once minimum contacts are established, the defendant must prove that the exercise of jurisdiction would "render justice unreasonable." Coyle, 340 F.3d at 1352. In making its assessment, the Court may consider: "(1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." Id.

Molten Japan asserts that exercise of jurisdiction in this case would be unreasonable for the following reasons (1) it would be forced to defend this suit thousands of miles away from its principal place of business; (2) Washington's interest in adjudicating this dispute is not compelling because Molten Japan has not directed any allegedly infringing activities towards Washington residents; and (3) Baden's interest in obtaining relief would not be impacted by the Court's decision because Baden could maintain its suit against Molten U.S.A.

The Court is not persuaded that the inconvenience to Molten Japan is significant enough to render jurisdiction in this Court unreasonable. The Court has already found that Molten Japan purposely directs its activities at the forum state through the acts of its agent, Molten U.S.A. It

should come as no surprise to Molten Japan that it may be sued here. Moreover, "[p]rogress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome." Beverly Hills, 21 F.3d at 1569 (internal citations and quotations omitted); Sinatra v. National Enquirer, Inc., 854 F.2d 1191, 1199 (9th Cir. 1988) ("[M]odern advances in communications and transportation have significantly reduced the burden on litigating in another country."). Molten Japan may confer with counsel by telephone, fax, and e-mail, and under this Court's Local Rules may even make telephonic court appearances. Any burden on Molten Japan is further minimized by its regular dealings with Molten U.S.A. See Beverly Hills, 21 F.3d at 1569.

Molten Japan's burden does not outweigh the state and plaintiff's interests in the litigation. Washington has an interest in the litigation because Baden is located here. And although Baden could maintain its suit just against Molten U.S.A., Molten Japan is the entity that designs and manufactures (through another subsidiary) the allegedly infringing basketball. Defendants have therefore not demonstrated that the burden of litigating the instant case will be so great as to constitute a deprivation of due process.

**C. Venue**

In a patent infringement case against a corporate defendant, venue exists wherever there is personal jurisdiction over the defendant. Trintec Indus. v. Pedre Promotional Prods., 395 F.3d 1275, 1280 (Fed. Cir. 2005). Because the Court has personal jurisdiction over Molten Japan, venue in this judicial district is proper.

**CONCLUSION**

Because Molten Japan uses Molten U.S.A. as its marketing and distribution conduit in the United States, because Baden has made a prima facie showing that Molten U.S.A. has sufficient minimum contacts to support specific jurisdiction, and Because Molten Japan has failed to show that jurisdiction would be unreasonable, the Court DENIES Molten Japan's motion to dismiss for lack of personal jurisdiction and inappropriate venue.

The Clerk is directed to send copies of this order to all counsel of record.

Dated this 17th day of January, 2007.

Marsha J. Pechman
United States District Judge