1

Honorable Marsha Pechman

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

BADEN SPORTS, INC.,

11

               Plaintiff,

Case No. C06-0210-MJP

12

    v.

**THIRD AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND UNFAIR COMPETITION**

13

14

KABUSHIKI KAISHA MOLTEN (DBA MOLTEN CORPORATION) and MOLTEN U.S.A. INC.

**JURY TRIAL DEMANDED**

15

               Defendants.

16

17

On information and belief, plaintiff Baden Sports, Inc. ("Baden") hereby alleges as follows:

18

## I. PARTIES, JURISDICTION, AND VENUE

19

1.     Baden is a Washington state corporation, with its principal place of business in

20

Federal Way, Washington. Baden is in the business of selling and supplying sporting goods to

21

the public.

22

2.     Molten U.S.A. Inc. ("Molten USA") is a Nevada corporation with its principal

23

place of business in Sparks, Nevada. Like Baden, Molten USA is in the business of selling and

supplying sporting goods to the public, including within this judicial district.

24

3.     Kaibushiki Kaisha Molten ("Molten Corporation") is a Japan corporation doing

25

business in the United States and elsewhere under the trade name "Molten Corporation."

26

THIRD AMENDED COMPLAINT FOR PATENT
INFRINGEMENT AND UNFAIR COMPETITION - 1
C06-0210-MJP
SEADOCS:259008.1

1      4.     Molten Corporation manufactures, in Thailand, the sporting goods that are the

2  subject of this complaint and ships them for distribution and sale inside the United States and its

3  territories, including within this judicial district.

4      5.     Molten Corporation owns or controls Molten USA and uses Molten USA as a

5  distributor in the United States.  Molten Corporation also has agreements with other entities,

6  such as the Federation de Internationale de Basketball ("FIBA") and Rothco Sports.  As a

7  consequence of these two agreements, and others like them, entities other than Molten USA also

distribute Molten Corporation's products in the United States.

8      6.     The basketball and other products that are the subject of this complaint are being

9  offered for sale and/or sold in this judicial district by Molten Corporation, Molten USA, and

10  FIBA.  These products are also being offered for sale and/or sold on behalf of Molten

11  Corporation by Molten USA and retailers engaged in trade and commerce in this district,

12  including G.I. Joe's (a northwest-based retailer) and Sports Authority (a national retailer).  G.I.

13  Joe's has approximately 10 business locations in western Washington state, including Seattle,

14  Issaquah, Kent and Federal Way, Washington.  Sports Authority has two business locations in

15  Bellevue and a third in Tukwila, Washington.  Certain acts of false advertising and unfair

16  business practices alleged in this complaint are being conducted in this district by both Molten

17  Corporation and Molten USA.  FIBA sponsors at least one basketball model that is the subject of

18  this complaint; offers the product for sale to consumers in this judicial district; and sells the

product directly to consumers in this judicial district on orders placed by the consumer:

19

20

21

22

23

24

25

26

THIRD AMENDED COMPLAINT FOR PATENT
INFRINGEMENT AND UNFAIR COMPETITION - 2
C06-0210-MJP
SEADOCS:259008.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE, WASHINGTON  98101-2352

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

THIRD AMENDED COMPLAINT FOR PATENT
INFRINGEMENT AND UNFAIR COMPETITION - 3
C06-0210-MJP
SEADOCS:259008.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE, WASHINGTON 98101-2352

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26



THIRD AMENDED COMPLAINT FOR PATENT
INFRINGEMENT AND UNFAIR COMPETITION - 4
C06-0210-MJP
SEADOCS:259008.1

7.    This is an action for patent infringement and unfair competition arising under the patent and unfair competition laws of the United States, namely 35 U.S.C. § 1 *et seq.* and 15 U.S.C. § 1125, and the unfair competition laws of the state of Washington, namely, R.C.W. 19.86.020.

8.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 because this action involves claims of patent infringement under 35 U.S.C. § 271 and claims of unfair competition under 15 U.S.C. § 1125.

9.    Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391.

## II. FACTS

10.    Baden is in the business of supplying and selling basketballs and other sporting goods. In the mid-90's, Baden developed a new game-quality basketball that is "cushioned" or "padded." The basketball is padded by manufacturing it with a cellular sponge layer that underlies the basketball's exterior skin panels and seams.

11.    On May 12, 1995, Baden filed a patent application in the United States Patent Office ("USPTO") on certain features of its padded basketball design considered to be unique by Baden. Among other things, Baden's design created basketball seams having a "soft" feel. The USPTO subsequently granted Baden a patent on June 10, 1997: U.S. Patent No. 5,636,835 ("the '835 patent").

12.    The '835 patent is valid and enforceable. Baden owns the patent and has continuously made basketballs covered by the patent since the mid-90's.

13.    Set forth below is a copy of a Figure taken from the '835 patent that schematically illustrates the seam and cellular sponge layer construction of Baden's patented design:

Fig.   3

THIRD AMENDED COMPLAINT FOR PATENT
INFRINGEMENT AND UNFAIR COMPETITION - 5
C06-0210-MJP
SEADOCS:259008.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE, WASHINGTON 98101-2352

14.    Arrow 20 above points to the top of a basketball seam that is formed from a thin strip of rubber (shown in cross-section).  Arrows 32 and 34 respectively point to seam flanges that extend away on opposite lateral sides and underlie sections of skin panels 18 – which make up the exterior surface of the basketball.  Arrow 16 points to the cellular sponge layer below the seam and panels.

15.    Advertising it as Molten-developed "technology," Molten Corporation and Molten USA (collectively "Molten") recently introduced several basketball models into the United States market that copy Baden's patented design.  Molten refers to these basketballs as "dual cushion" basketballs or "dual cushion technology":



16.    Molten's "dual cushion" basketballs duplicate the seam and cellular sponge layer construction of Baden's basketball even more closely than the exaggerated picture shown in Molten's advertising.  The following is a recent picture of a section from the Molten GG7 "dual cushion" basketball:

THIRD AMENDED COMPLAINT FOR PATENT
INFRINGEMENT AND UNFAIR COMPETITION - 6
C06-0210-MJP
SEADOCS:259008.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE, WASHINGTON  98101-2352

1

2

3

4

5

6

7

8

9

10



11

12   17.     In addition to the GG7 basketball, Molten is also offering for sale in this district,

13   and elsewhere, other basketball models that incorporate Molten's purported "dual cushion

14   technology," including but not necessarily limited to Molten's GL7 basketball; GL6 basketball;

15   GG6 basketball; B7GX basketball; and B6GX basketball.  All of these basketballs duplicate the

16   seam and cellular sponge layer construction depicted in the above photograph – which was

17   originally developed by Baden.

18   18.     Both Molten and retailers are advertising the GL7, GG7, GL6, GG6, B7GX and

19   B6GX basketballs as either "dual cushion" basketballs or as basketballs having "dual cushion

20   technology."  Molten represents to the public, including the public in the United States and this

21   judicial district, that Molten's "dual cushion technology" is "Molten's innovative proprietary

22   Dual-Cushion Technology."

23   19.     The GL7 basketball is Molten's top of the line basketball and is sold for

24   basketball competition.  It varies from the GG7 only with respect to the type of skin material

25   (leather vs synthetic material) that is used to make the ball's outer cover.

26   20.     The GL7 and certain other "G-Series" basketballs manufactured by Molten (i.e.,
GG7, GL6 and GG6) have a twelve-panel exterior surface with dual colors (orange and yellow).
Molten represents this design to the public as the "G-Series ball, a fusion of tradition and
innovation conceived by Giugario Design" that is "packed with groundbreaking technology to

THIRD AMENDED COMPLAINT FOR PATENT
INFRINGEMENT AND UNFAIR COMPETITION - 7
C06-0210-MJP
SEADOCS:259008.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE, WASHINGTON  98101-2352

1   enhance player performance."  Giugario Design purports to be a prominent product design

2   company headquartered in Italy.

3       21.    Molten filed for and obtained at least two "design" patents in the United States

4   claiming patent rights on the G-Series ball conceived by Giugario Design: U.S. Patent Nos.

5   D498,803 and D493,856.  However, Molten named a Molten sales and marketing employee,

6   Kiyoaki Nishihara, as the person who conceived of the Giugario Design.

7       22.    Molten is a party to numerous agreements with other entities ("Molten's

8   sponsorship agreements") for the purpose of promoting and selling basketball and other sporting

9   goods products that Molten sells in competition with Baden.  Many of these agreements affect

    trade, commerce and competition inside the United States, including within this judicial district.

10      23.    Molten's sponsorship agreements include but are not limited to agreements with

11  (1) FIBA; (2) the Puerto Rico Basketball League; (3) the National Collegiate Athletic

12  Association ("NCAA"); (4) the American Youth Soccer Organization ("AYSO"); (5) the

13  Western Athletic Conference ("WAC"); and the Puget Sound Region of USA Volleyball ("USA

    Volleyball").  Some of these agreements involve Molten-paid corporate sponsorships for

14  basketballs; others involve Molten-paid sponsorships for other inflatable sports balls products

15  manufactured by Molten (volleyballs, soccer balls, etc.).

16      24.    Sponsorship agreements are common in the sporting goods industry.  They are

17  often referred to as "adoption" agreements and involve manufacturer payments to international,

18  national and state athletic associations.  In return for the payments, the manufacturer's product is

19  designated as the "official ball" of the athletic association.  These agreements are used by

20  manufacturers in a variety of ways to promote advertising of their products or to influence

    institutional (e.g., school districts) and consumer purchasing decisions.  Sponsorship agreements

21  influence institutional and consumer purchasing decisions because these customers tend to

22  purchase the brand designated as "official" by an athletic association.

23      25.    Molten has a basketball sponsorship agreement with FIBA.  FIBA purports to be

24  the world governing body for basketball that controls and regulates international basketball

    competition.  Molten claims to have had a sponsorship relationship with FIBA continuously

25  since 1981.

26

THIRD AMENDED COMPLAINT FOR PATENT
INFRINGEMENT AND UNFAIR COMPETITION - 8
C06-0210-MJP
SEADOCS:259008.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE, WASHINGTON  98101-2352

26.     Molten pays FIBA to designate the GL7 as the "official" FIBA basketball. Because FIBA grants the "official" designation to only one manufacturing brand, and excludes other manufacturer's from having "official" game ball status for FIBA events, the designation forces basketball teams to use the GL7 in international events, and purchase the GL7 from Molten, if they wish to practice with the "game ball" before an event.   Institutions and consumers also make purchasing decisions based on the "official" ball used to play in events.  In this way, Molten promotes its products and profits from Molten's sponsorship agreement with FIBA.

27.     Moreover, manufacturers also use sponsorship agreements to indirectly advertise products on television without paying broadcast networks for advertising.  The GL7 basketball is now designated by FIBA as the basketball that will be used for men and women's basketball events leading up to and including the 2008 Summer Olympics.  As a consequence, one or more major television networks are broadcasting, or will broadcast, into the United States basketball games using the GL7 ball.  At certain times during a basketball game, television cameras invariably show players holding or playing with the basketball at an angle so that viewers can see the brand on the ball.  Molten therefore stands to realize significant advertising value from television broadcasts of games where the GL7 basketball is used - a basketball that has Molten's "dual cushion technology."

28.     Molten's agreement with FIBA in combination with Molten's purported patent rights is an attempt by Molten to create an ongoing monopoly over the use of the "official" ball in international competition.

29.     Molten has also misled FIBA into touting Molten's "dual cushion technology." For example, FIBA's secretary general recently stated, "I would like to thank Molten for demonstrating such commitment to the advancement of cutting-edge ball technology, and thus contributing so greatly to the development of the sport as a whole.  We look forward to Molten's continued pursuit of excellence and advancement of technological standards."

30.     Pursuant to agreement with Molten, FIBA sells GL7 basketballs directly to consumers in the United States.  Although the GL7 basketball is manufactured by Molten in Thailand, Molten is delivering these basketballs to FIBA for distribution and sale in the United States with no country of manufacturing origin marked on the basketball.

THIRD AMENDED COMPLAINT FOR PATENT
INFRINGEMENT AND UNFAIR COMPETITION - 9
C06-0210-MJP
SEADOCS:259008.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE, WASHINGTON  98101-2352

31.     The country of manufacturing origin is typically printed near the air inflation valve on an inflatable sports balls.  At that location, manufacturers usually mark their products with "Thailand," "made in China," or equivalent markings, as applicable.  For example, Molten marks "Thailand" on Molten's volleyball and soccer ball products at that location.  The following is a recent picture of the air valve location on a GL7 Olympic basketball sold in the United States by FIBA:



32.     Molten is failing to properly mark the GL7 and other basketballs with an appropriate country of origin designation.

33.     In addition to the FIBA agreement, Molten entered into one or more agreements with other entities with the intent of fixing prices and/or excluding Baden from advertising or selling Baden's other products to consumers both inside and outside the state of Washington.

34.     As one example of Molten's exclusionary conduct, in return for payments made to the Wisconsin Interscholastic Athletic Association, Molten's volleyball was designated as the "official" ball for state tournament play.  Knowing that school districts make purchasing decisions based on the ball designated for state tournament play, to the exclusion of other manufacturer's ball products, Molten asked its Wisconsin dealers to fix prices and charge both school districts and consumers prices that exceeded Molten's normal competitive price by

THIRD AMENDED COMPLAINT FOR PATENT
INFRINGEMENT AND UNFAIR COMPETITION - 10
C06-0210-MJP
SEADOCS:259008.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE, WASHINGTON 98101-2352

1    approximately $6.00 per volley ball.  Baden sells volleyballs in all states of the U.S. in
2    competition with Molten.

3          35.    As another example of Molten's exclusionary conduct, in return for payments
4    made to the AYSO, a national youth soccer organization, Molten demanded that AYSO exclude
5    Baden and other competitors from exhibiting their soccer ball products at AYSO events that have
     traditionally been open to the public and all exhibitors willing to pay for exhibition space.
6          36.    Baden developed its padded basketball design in reaction to competitive
7    pressures.  At the time it was developed, none of Baden's competitors sold a similar type of
8    padded basketball.

9          37.    Baden commercialized its design while the '835 patent was pending.  During that
10   time, Baden believed that one or more competitors were attempting to copy Baden's design by
11   altering the seam construction developed by Baden, in a manner so as to take advantage of the
     soft feel that Baden's design offers, while at the same time attempting to avoid the scope of
12   Baden's patent rights.

13         38.    As a consequence, in order to clarify public notice of Baden's claim to patent
14   rights, on May 22, 1997, Baden filed a continuing patent application in the USPTO.  The USPTO
15   subsequently granted Baden a second patent on February 8, 2000:  U.S. Patent No. 6,022,283
16   ("the '283 patent").

17   **FIRST CLAIM FOR RELIEF – INFRINGEMENT OF '835 PATENT**

18         39.    Baden realleges and incorporates the allegations in all previous paragraphs set
     forth above, as if fully set forth herein.

19         40.    What Molten purports to be "Molten's innovative proprietary Dual Cushion
20   Technology" was knowingly and willfully copied from basketballs originally developed by
21   Baden.  The seam and cellular sponge construction of Molten's GL7, GG7, GL6, GG6, B7GX
22   and B6GX basketballs is substantially identical to the design described in Baden's '835 and '283
23   patents.

24         41.    Molten is presently making, using, selling or offering to sell basketballs in the
25   United States, including within this judicial district, that infringe upon one or more claims of
     Baden's '835 patent in violation of 35 U.S.C. § 271.  Molten is also actively inducing
26

THIRD AMENDED COMPLAINT FOR PATENT
INFRINGEMENT AND UNFAIR COMPETITION - 11
C06-0210-MJP
SEADOCS:259008.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE, WASHINGTON  94101-2352

1  infringement of the '835 patent by others.  Molten's violation of Baden's patent rights is

2  intentional and willful.

3      42.    Under the applicable patent laws of the United States, in order to obtain a

4  judgment of patent infringement, Baden needs to establish by a preponderance of the evidence

5  that Molten is making, using, selling or offering to sell basketballs that are covered by at least

6  one patent claim of the '835 patent.  Molten is infringing claims 1, 2, 3, 4 and 5 of the '835

   patent.

7      43.    As an example of infringement, claim 1 of the '835 patent reads on and covers

8  Molten's GG7, GL7, and other Molten "dual cushion" basketballs, as follows:

9

| Claim 1 – '835 Patent | Is corresponding component present in Molten GG7 Basketball? |
|---|---|
| 1.  A padded inflatable ball, comprising: | Yes – the GG7 is a padded inflatable ball |
| an inner carcass portion defining the shape of the ball; | Yes -- the inner carcass of the GG7 is the same as the one described in the '835 patent |
| a cellular sponge layer surrounding the inner carcass portion; | Yes – the GG7 has a layer of cellular sponge surrounding the inner carcass in the same way as the '835 patent describes |
| a plurality of raised seams defined by strips of a seam material, wherein the sponge layer underlies the raised seams, and further, the inner carcass portion, the cellular sponge layer and raised seams together define a ball carcass; | Yes – the GG7 has raised seams made from strips of rubber that overlie the sponge layer; with the inner carcass of the GG7, its sponge layer, and seams making a ball carcass in the same way as described in the '835 patent |
| a plurality of skin panels attached to the ball carcass between the seams; and further, each strip of seam material comprises: | Yes – the GG7 has a number of skin panels attached to the ball carcass between the seams in the same way described in the '835 patent |
| a raised portion positioned between spaced, outer edges of the skin panels on opposite sides of the raised portion; and | Yes – each strip of seam material in the GG7 comprises a raised part between spaced-apart outer edges of skin panels, the skin panel edges being on opposite sides of the raised portion in the same way described in the '835 patent |
| flange portions extending away from opposite sides of the raised portion, the flange portions underlying at least the outer edges of the skin panels and being sandwiched between the skin panels and the cellular sponge layer. | Yes – each strip of seam material in the GG7 has flange portions extending away from opposite sides of the raised part, that underlie the skin panels, and are sandwiched between the skin panels and cellular sponge in the same way described in the '835 patent |

THIRD AMENDED COMPLAINT FOR PATENT
INFRINGEMENT AND UNFAIR COMPETITION - 12
C06-0210-MJP
SEADOCS:259008.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE, WASHINGTON  98101-2352

## SECOND CLAIM FOR RELIEF – UNFAIR COMPETITION UNDER THE LANHAM ACT

44.     Baden realleges and incorporates the allegations in all previous paragraphs set forth above, as if fully set forth herein.

45.     Molten is manufacturing basketballs in Thailand and importing them into the United States without marking the country of origin.  This conduct is deceptive and a misleading representation of fact that misrepresents the geographic origin of Molten's basketballs in violation of 15 U.S.C. § 1125.

46.     At the same time Molten is manufacturing basketballs in Thailand and importing them into the United States without marking the country of origin, Molten is also advertising these basketballs as having been conceived by a prominent Italian design company.  This conduct is intended to mislead the public into believing that these products have certain qualities that they do not have and is a misleading representation of fact in violation of 15 U.S.C. § 1125.

47.     Molten is making other false or misleading statements of fact to the public in commercial advertising that misrepresents the qualities of Molten's GL7, GG7, GL6, GG6, B7GX and B6GX basketballs.  Specifically, Molten is falsely advertising, promoting and misrepresenting Molten's "dual cushion technology," and/or the "G Series" basketball, as innovative technology that is proprietary to Molten when, in fact, the technology was developed by Baden and copied by Molten.  This conduct also violates 15 U.S.C. § 1125.

48.     Molten is making false or misleading statements of fact in commercial advertising or promotions that Molten's "dual cushion technology" basketballs were designed by Molten and are a recent Molten innovation.  In fact, Molten simply copied Baden's design.  Molten's statements actually deceive or are likely to deceive a substantial segment of the intended audience.  The deception is material in that it is likely to influence purchasing or basketball sponsorship decisions.  Molten caused the statements to enter interstate commerce.  The statements result in actual or probable injury to Baden.  Molten's statements also include statements that Molten's "dual cushion technology" basketballs are "proprietary" to Molten. Any Molten statement that "dual cushion technology" is "proprietary" to Molten is made in bad faith because Molten knowingly copied the "dual cushion technology" from Baden and has no

THIRD AMENDED COMPLAINT FOR PATENT
INFRINGEMENT AND UNFAIR COMPETITION - 13
C06-0210-MJP
SEADOCS:259008.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE, WASHINGTON  98101-2352

1  right to call it Molten's.  This conduct constitutes a false and misleading representation of fact

2  that is likely to deceive the public in violation of 15 U.S.C. § 1125.

3

## **PRAYER FOR RELIEF**

4      WHEREFORE, Baden requests the following relief:

5      a.      That the court find that Molten, and those acting in concert with Molten have

6  violated 35 U.S.C. § 271 and Baden's patent rights by infringing the '835 patent;

7      b.      That Molten, and those acting in concert with Molten be permanently enjoined

8  from infringing the '835 patent, pursuant to 35 U.S.C. § 283, including but not limited to an

9  injunction barring:

10          (1)      the importation of infringing basketballs into the United States or use of

11      American ports or American transportation systems in connection with importing,

        exporting, or shipping infringing basketballs;

12          (2)      all advertising of infringing basketballs in any way that is accessible to

13      United States customers or the consuming public in the United States, including Internet

14      web sites;

15          (3)      all television broadcasts that can be received by television viewers in the

16      United States, regardless of source or location of the broadcast, in which an infringing

17      basketball is used, including but not limited to all broadcasts of FIBA and 2008 Summer

        Olympics events;

18      c.      That Molten, and those acting in concert with Molten be ordered to pay to Baden

19  damages adequate to compensate Baden, pursuant to 35 U.S.C. § 284, in an amount to be proven

20  at trial, but in any event no less than a reasonable royalty for all infringing basketballs imported

21  into the U.S., or sold in the U.S., or imported and exported through the use of American ports, or

22  transported though the U.S. in any way;

23      d.      That Molten, and those acting in concert with Molten be ordered to pay Baden

24  applicable costs, prejudgment and post judgment interest on all damages proven by Baden at

    trial, pursuant to 35 U.S.C. § 284;

25

26

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE, WASHINGTON 98101-2352

1    e.    That Molten, and those acting in concert with Molten be found to have engaged in

2  willful acts of infringement and required to pay Baden an increased damages award of three (3)

3  times the amount proven by Baden at trial, pursuant to 35 U.S.C. § 284;

4    f.    That Molten, and those acting in concert with Molten be found to have engaged in

  willful acts of infringement and required to pay Baden's attorney's fees pursuant to 35 U.S.C.

5  § § 284 and 285;

6    g.    That Molten, and those acting in concert with Molten be found to have engaged in

7  intentional and willful acts of unfair competition in violation of 15 U.S.C. § 1125 and required to

8  pay Baden all of Molten's profits attributable to sales of Molten's GL7, GG7, GL6, GG6, B7GX

9  and B6GX basketballs;

10    h.    That Molten, and those acting in concert with Molten be permanently enjoined

11  from further violation of 15 U.S.C. § 1125, including but not limited to an injunction barring

  Molten from making further misrepresentations of fact and an order requiring Molten to mark the

12  correct country of origin on all products made by Molten;

13    i.    That Baden be entitled to any additional damages or relief that may not be

14  specifically stated above but are nevertheless permitted for violation of the statutes and laws

15  pleaded herein; and

16    j.    That Baden be entitled to such further relief as the Court deems just and proper.

17        DATED this 29th day of January, 2007.

18        MILLER NASH LLP

19        _/s/ James Phillips_____

20        James Phillips, WSB No. 13186

21        OF COUNSEL:

22        Bruce Kaser
        WSB No. 13532

23        Vantage Law PLLC
        355 NW Gilman Blvd, Suite 203

24        Issaquah, WA 98027
        Direct: (425) 391-8741

25        Fax: (425) 391-8754

26        Attorneys for Plaintiff

THIRD AMENDED COMPLAINT FOR PATENT
INFRINGEMENT AND UNFAIR COMPETITION - 15
C06-0210-MJP
SEADOCS:259008.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE, WASHINGTON  98101-2352

1                                 **CERTIFICATE OF SERVICE**

2         I hereby certify that on January 29, 2007, I electronically filed Plaintiff Baden

3 Sports, Inc.'s Third Amended Complaint for Patent Infringement and Unfair Competition with

4 the Clerk of Court using the CM/ECF system which will send notification of such filing to the

5 registered participants as identified on the Notice of Electronic Filing (NEF).

6                 James E. Armstrong, III

7                 Armstrong, Kratz, Quintos, Hanson & Brooks, LLP
                1725 K Street N.W., Suite 1000

8                 Washington, D.C.  20006
                Email:  jarmstrongIII@armstrongpat.com, gan@armstrongpat.com

9                 Joseph V. Colaianni

10                Patton Boggs LLP
               2550 M Street N.W.

11                Washington, D.C. 20037
               Email:  jcolaianni@pattonboggs.com

12                Richard L. Goff

13                1000 Second Avenue, Suite 3310
               Seattle, Washington  98104

14                Email:  rgoff@rgofflaw.com, dandd@sounddsl.com

15

16                                      */s/ James L. Phillips*
                                     James L. Phillips

17

18

19

20

21

22

23

24

25

26

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET, SEATTLE, WASHINGTON  98101-2352