UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BADEN SPORTS, INC.,

                Plaintiff,

v.

KABUSHIKI KAISHA MOLTEN (DBA MOLTEN CORPORATION) AND MOLTEN U.S.A., INC.,

                Defendants.

No. C06-0210P

ORDER DENYING MOTION TO DISMISS / MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendants' motion to dismiss Plaintiff's non-patent related claims. (Dkt. No. 48). Defendants request that the Court dismiss and/or grant summary judgment in favor of Defendants on Baden's third, fourth, fifth, and sixth causes of action in their Second Amended Complaint. On January 26, 2007, the Court granted Baden leave to amend its complaint. (Dkt. No. 102). Baden has filed a Third Amended Complaint, which eliminates the fourth, fifth, and sixth causes of action, and clarifies the third cause of action. The Court's analysis is therefore limited to Defendants' request that the Court dismiss that portion of Baden's third cause of action that remains in the Third Amended Complaint.  Having reviewed the papers and pleadings submitted by the parties, the Court DENIES Defendants' motion.

## BACKGROUND

Defendants Kabushiki Kaisha Molten and Molten U.S.A. (hereinafter "Molten") and Plaintiff Baden Sports are competitors in the sports ball business. In the 1990's, Baden developed and patented a new game-quality basketball that is "cushioned" or "padded." (Third Amended Complaint

ORDER - 1

[hereinafter Compl.] ¶ 10.)  The basketball is "padded" by manufacturing it with a cellular sponge layer that underlies the basketball's exterior skin panels and seams. (Id.).  Baden alleges that Molten recently introduced several basketball models into the U.S. market that copy Baden's patented technology. (Compl. ¶ 15).  Baden alleges that Molten's "dual cushion technology," which is incorporated into numerous Molten basketball models, duplicates the "seam and cellular sponge layer construction" of Baden's patented design.

Molten has obtained U.S. "design" patents on at least one of its allegedly infringing balls. (Compl. ¶ 21).  Molten also has a basketball sponsorship agreement with FIBA (the Federation Internationale de Basketball), which purports to be the world governing body for basketball that controls and regulates international basketball competition.  Baden alleges that pursuant to an agreement with Molten, FIBA sells allegedly infringing Molten basketballs directly to consumers in the United States. (Compl. ¶ 30).

Molten advertises its "dual cushion technology" as its own innovation.  (See Kaser Decl., Exs. A, C, G, J).  For example, in an article in FIBA Assist Magazine, Kiyoaki Nishihara, a Molten employee and the named inventor on several of Molten's patents, describes how Molten developed its "project to create a new design for the basketball."  The article goes on to describe "Molten's innovative proprietary Dual-Cushion technology."  The article states that the technology incorporated in the new basketball, including the dual-cushion technology and the exterior design, is "[t]echnology that only Molten can create." (Kaser Decl., Exh. J).

In addition to its allegations regarding Molten's advertising, Baden alleges that Molten imports its balls into the United States without marking the country of origin. (Compl. ¶ 46).  Baden alleges that Molten's conduct constitutes unfair competition under the Lanham Act, 15 U.S.C. § 1125.

Baden filed suit in February 2006.  Since then, it has amended its complaint three times. (Dkt. Nos. 9, 25, 103).  Before Baden amended its complaint the third time, Defendants filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and 56. Defendants have also answered the Third Amended

ORDER - 2

Complaint and filed counterclaims. (Dkt. No. 105). In their response to Baden's motion to amend, Defendants make clear that their motion to dismiss remains relevant to Plaintiff's third claim for relief in the Second Amended Complaint.[1] (See Dkt. No. 95).

## ANALYSIS

### I. Standard on Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) and 56

Fed. R. Civ. P. 12(b)(6) provides for dismissal of a claim if a plaintiff has failed to state a claim upon which relief can be granted. A Rule 12(b)(6) motion will be denied unless it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Falkowski v. Imation Corp., 309 F.3d 1123, 1132 (9th Cir. 2002) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)). The court takes all material allegations in the complaint as true and construes them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

Rule 12(b)(6) does not allow a court to reach "matters outside the pleading" without following the summary judgment procedures of Rule 56. Fed. R. Civ. P. 12(b); San Pedro Hotel Co., Inc. v. City of Los Angeles, 159 F.3d 470, 477 (9th Cir. 1998) ("If matters outside the pleadings are considered, the motion to dismiss is to be treated as one for summary judgment."). Here, the parties have filed declarations and exhibits in support of their briefs. Both parties have had an opportunity to present all material made pertinent to this motion. See Fed. R. Civ. P. 12(b). The Court will therefore treat this matter as a motion for summary judgment and apply the general standard of review for summary judgment. See San Pedro Hotel, 159 F.3d at 477.

Summary judgment is not warranted if a material issue of fact exists for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996). The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v.

---

[1] This claim is the second claim in Baden's Third Amended Complaint.

ORDER - 3

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. Id. at 324.

## II.    Motion to Strike

In its response, Baden moves under Local Rule 7(g) to strike an exhibit attached to a declaration presented on Molten's behalf as hearsay. (Resp. at 1). The exhibit at issue is a letter from Patrick Baumann, the Secretary General of FIBA, in which Mr. Baumann denies the allegations in Baden's complaint that involve FIBA and maintains that FIBA does not sell basketballs. (Colianni Decl., Exh. A). The letter is signed under penalty of perjury. (Id.). Molten has not refuted the allegations of hearsay.

Although the letter is offered to prove the truth of the matter asserted — that FIBA does not sell basketballs — the letter is signed under penalty of perjury and so is not an "out of court statement." See Fed. R. Evid. 801. Because the letter is not hearsay, the Court denies the motion to strike.

## III.   Claims for Unfair Competition Under the Lanham Act

Baden's Third Amended Complaint contains two main Lanham Act allegations. First, Baden alleges that Molten is importing basketballs into the United States without marking the country of origin. Baden alleges that this is a deceptive and misleading representation of fact that misrepresents the geographic origin of Molten's basketballs in violation of the Lanham Act, 15 U.S.C. § 1125. Second, Baden alleges that Molten is making false or misleading statements of fact in its commercial advertising in violation of 15 U.S.C. § 1125. Baden alleges that Molten is falsely advertising that its

ORDER - 4

basketballs were designed by a prominent Italian design company. (Compl. ¶ 46).  And Baden alleges that Molten is falsely advertising that its "dual cushion technology" is its own proprietary innovative technology when, in fact, Baden alleges that Molten copied Baden's technology. (Compl. ¶¶ 47-48).

Molten argues that the Court should grant summary judgment in favor of Molten and dismiss both bases for Baden's Lanham Act claim.

### A.     Misrepresentation of Geographic Origin

Molten argues that Baden has not stated a proper claim regarding "geographic misdescriptiveness."  Baden's argument in this regard focuses on Molten basketballs that are imported into the United States through the FIBA online store.  Molten does not dispute that balls ordered through the FIBA store arrive to the United States without a country of origin mark.  Molten argues that it properly marks all balls that <u>it</u> imports into the United States and that for Molten balls imported through the FIBA online store, the duty to mark the country of origin falls on the importer (i.e., U.S. consumers), not Molten or its European distributor.  Molten has argued in its briefing and during oral argument that Fan Avenue, a French basketball vendor which rents website space from FIBA, purchases and imports Molten basketballs to Europe, where there are no country of origin marking requirements, and then, in turn, offers those unmarked basketballs for sale over the internet to purchasers throughout the world.[2]  Baden has not disputed that the European distributor (whether Fan Avenue or FIBA) purchases the Molten basketballs in Europe before distributing them elsewhere.

The Tariff Act states that "every article of foreign origin . . . imported into the United States shall be marked" to indicate the country of origin of the article. 19 U.S.C. § 1304.  But Baden has not brought its claim under 19 U.S.C. § 1304.  Instead, Baden argues that by not marking the country of origin on some balls that make their way to the U.S., Molten has violated section 43 of the Lanham Act, 15 U.S.C. § 1125(a).  That section of the Lanham Act prohibits the use of any "word, term, name, symbol, or device . . . or any false designation of origin, false or misleading description of fact,

---

[2]  The parties spend much time disputing whether it is actually FIBA or "Fan Avenue" that runs the FIBA online store and is the <u>actual</u> distributor and seller of Molten products.  This dispute is not material to any of the issues presented here.

ORDER - 5

or false or misleading representations of fact" which "in commercial advertising or promotion, misrepresents the . . . geographic origin of his . . . goods. . . ." 15 U.S.C. § 1125(a)(1).

Baden claims that "deceptive conduct relating to geographic misdescriptiveness is actionable under the Lanham Act" and cites three cases: Kompan v. Park Structures, Inc., 890 F. Supp. 1167, 1182 (N.D.N.Y. 1995); Forschner Group v. Arrow Trading Co., 30 F.3d 348, 352-56 (2d Cir. 1994); and Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc., 633 F.2d 746, 751 (8th Cir. 1980). But Kompan does not discuss geographic misdescriptiveness and the other two cases only discuss geographic misdescriptiveness in the context of a product that is given a name with a geographic term, like "Swiss Army knife" or "Black Hills jewelry." See Forschner Group, 30 F.3d at 354 ("Under the false advertising provision of the Lanham Act, a phrase is eligible for protection as a representation of geographic origin only if the phrase is geographically descriptive (i.e., Swiss Watches, Idaho Potatoes)."); Black Hills Jewelry, 633 F.2d at 751. These cases are therefore inapposite to the question of whether an omission of a mark constitutes a misrepresentation regarding geographic origin. In this case, there is no allegation that Molten is affirmatively marking its basketballs with a geographically misdescriptive term.

Nevertheless, a number of courts have concluded that the omission of a geographically descriptive term is actionable under the Lanham Act. See Alto Products Corp. v. Ratek Indus. Ltd., 40 U.S.P.Q.2d 1738 (S.D.N.Y. 1996); Bohsei Enterprises Co. v. Porteous Fastener Co., 441 F. Supp. 162 (C.D. Cal. 1977). In Bohsei Enterprises Co. v. Porteous Fastener Co., 441 F. Supp. 162 (C.D. Cal. 1977), in discussing Congress's purpose in requiring imported products to be marked with the country of origin, the district court concluded that "[t]he law of false representation must necessarily include the omission of the material fact of origin that affirmatively says in the context in which fasteners are sold 'I am a product of the United States.' " Bohsei, 441 F. Supp. at 164 (emphasis added). The court in Alto agreed with the reasoning of Bohsei and concluded that a failure to designate the country of origin in violation of the Tariff Act violates § 43(a) of the Lanham Act as a matter of law:

ORDER - 6

> Logic dictates that . . . a consumer encountering goods with no marking as to country of origin will assume that they are American-made, thus creating a likelihood of confusion with goods which are, in fact, American-made.

The Court agrees with the reasoning of <u>Bohsei</u> and <u>Alto</u> and concludes that a failure to mark the country of origin is actionable under the Lanham Act. Baden has alleged and presented evidence suggesting that Molten basketballs imported into the United States through the FIBA online store are done so without any country of origin marking. (Compl. ¶¶ 30-31). Molten does not contradict this allegation. (Mot. at 15-16). The Court therefore DENIES Molten's motion as it relates to this aspect of Baden's Lanham Act claim.

The Court notes, however, that the parties have not addressed whether the Lanham Act reaches Molten in this instance where it is not Molten, but either Fan Avenue or FIBA, who is the actual distributor of these basketballs to U.S. consumers. Molten has asserted that it does not own the basketballs when they are sold to U.S. consumers through the FIBA online store. In any further briefing on this claim, the parties should discuss whether Molten itself is liable for any Lanham Act violation relating to geographic misdescriptiveness where it is not the distributor or the U.S. importer of these allegedly unmarked balls.

**B.    Misrepresentation of "Dual-Cushion" Technology as Molten innovation**

Baden's main claim is that Molten is falsely advertising that Molten developed its "dual-cushion technology" when in actuality that technology is a copy of Baden's patented technology.

Molten argues that this element of Baden's Lanham Act claim should be dismissed as well. First, Molten argues that it is not copying Baden's technology; it argues that its "dual cushion technology" is an outgrowth of designs Molten developed in the 1960s and 70s. Molten also argues that Baden's patent is invalid because of prior art. But these are both inherently factual issues that cannot be decided on a 12(b)(6) or a 56 motion.

Second, Molten argues that any suggestion that there is trade dress copying is inappropriate because the alleged similarities are "structural and therefore functional." (Mot. at 15). This argument is misplaced. Although Molten is correct that there is no trade dress protection for "functional"

ORDER - 7

features, Traffix Devices, Inc. v. Marketing Displays, Inc., 532 U.S. 23, 29 (2001), Baden is not asserting a trade dress claim. Instead, Baden is arguing that Molten is falsely advertising that Molten, and not Baden, developed the "dual-cushion technology".

Third, Molten argues that Molten's statements in advertising that this technology is "innovative" is not actionable because it is just "puffery." (Reply at 5). Baden has not had a chance to respond to this argument because it was presented for the first time in the context of Baden's Lanham Act claim in Molten's reply brief. Because Baden has not had a chance to respond, the Court will not consider at this stage whether Molten's assertions that it has developed an "innovative" and "proprietary" design is mere puffery.

The issue at the heart of Baden's Lanham Act claim — whether Molten's dual-cushion technology is actually Baden's innovation — cannot be determined on summary judgment. Indeed, the main issue in this case is whether Molten's technology infringes on Baden's patent. The Lanham Act claim cannot be resolved before the patent claim. The documents that Molten points to — a Japanese patent and a FIBA article — do not resolve this fact issue. Because there is a question of fact about whether Molten's dual cushion technology infringes on Baden's patented design, the Court DENIES Molten's request that the Court grant summary judgment on the issue of Baden's false advertising claim.

//
//
//
//
//
//
//
//
//

ORDER - 8

**CONCLUSION**

Baden has amended its complaint to eliminate many of the original issues in Molten's motion. For the remaining claims, the Court DENIES Molten's motion. Baden has asserted a viable claim for geographic misdescriptiveness and has presented evidence preventing summary judgment on this issue. And there are genuine issues of fact about whether Molten is falsely advertising its "dual cushion technology" as its own innovation. The Court therefore DENIES Molten's motion.

The Clerk is directed to send copies of this order to all counsel of record.

Dated this 2nd day of March, 2007.

Marsha J. Pechman
United States District Judge