UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BADEN SPORTS, INC.,

    Plaintiff,

v.

KABUSHIKI KAISHA MOLTEN (DBA MOLTEN CORPORATION) AND MOLTEN U.S.A. INC.,

    Defendants.

No. C06-210MJP

ORDER GRANTING IN PART AND DENYING IN PART BADEN'S MOTION FOR SUMMARY JUDGMENT AND DENYING REQUEST FOR INJUNCTIVE RELIEF

This matter comes before the Court on Plaintiff's motion for an order granting partial summary judgment to Baden for patent infringement, a permanent injunction in favor of Baden and dismissal of Defendants' counterclaim brought under the Lanham Act, 15 U.S.C. § 1125. (Dkt. No. 170.) Molten opposes the motion. (Dkt. No. 185.) Having considered the motion and response, Baden's reply (Dkt. No. 189), all documents submitted in support thereof, and the record herein, and having heard oral argument on the issues, the Court GRANTS IN PART and DENIES IN PART Baden's motion.

**Background**

The Court has previously described the facts underlying Plaintiff's claims in this case. Briefly, Defendants Kabushiki Kaisha Molten (d/b/a/ Molten Corp.) and Molten U.S.A. (collectively "Molten") and Plaintiff Baden Sports are competitors in the sports ball business. Molten Corp. is a Japan corporation; it owns Molten U.S.A. and uses Molten U.S.A. as its U.S. distributor. (Compl. ¶ 5.) In the 1990's, Baden developed and patented a new game-quality basketball that is "cushioned"

ORDER - 1

or "padded." (Third Amended Complaint [hereinafter Compl.] ¶ 10.)  The basketball is "padded" by manufacturing it with a cellular sponge layer that underlies the basketball's exterior skin panels and seams. (Id.)  On May 12, 1995, Baden filed a patent application on certain features of its padded basketball design. (Id. ¶ 11.)  The United States Patent Office granted Baden a patent on June 10, 1997: U.S. Patent No. 5,636,835 ("the '835 patent"). (Phillips Decl., Ex. A.)

In February 2006, Baden filed a complaint against the Molten defendants, alleging that Molten's "Dual Cushion Technology" basketballs infringe Baden's '835 patent, and that Molten's conduct violates the Lanham Act.  After a series of amendments that added and deleted claims, Baden's Third Amended Complaint substantially repeats the original patent infringement claim and asserts false advertising claims. (See Dkt. No. 103.)  Baden alleges that Molten recently introduced several basketball models into the U.S. market that copy Baden's technology. (Compl. ¶ 15.)  Baden alleges that Molten's "Dual Cushion Technology" basketballs duplicate the seam and cellular sponge layer construction of Baden's patented design.[1] (Compl. ¶ 40.)  Molten answered the Third Amended Complaint, asserting numerous defenses including invalidity for obviousness. (Dkt. No. 123.)  Molten also brought three counterclaims for (1) a declaratory judgment of patent invalidity of the '835 patent, (2) a declaratory judgment of non-infringement of the '835 patent, and (3) unfair competition under the Lanham Act. (Id.)  Baden responded to the counterclaims, and also brought its own counterclaim, asserting the following:

> [F]ollowing commencement of this action, and prior to the date of Molten's March 15 counterclaims, Molten alleged that it redesigned the basketball that gave rise to this action but did not alter the basketball model numbers.[2]  In response to Molten's latest

---

[1] Baden identified these basketballs by their model numbers:  GL7, GG7, GL6, GG6, B7GX, and B6GX. (Compl. ¶ 18.) Collectively, these basketballs are referred to as the "Dual Cushion Technology" basketballs or the "G-series" basketballs.

[2] In letters dated April 6, 2006, and May 10, 2006, from Molten's attorney to Baden's counsel, Molten's attorney explained that Molten Corp. had replaced the allegedly infringing basketballs with basketballs made according to Molten's Japanese Patent No. 51-157253, published on December 15, 1976. (Phillips Decl., Ex. H; Dkt. No. 132-3.)  It appears from the May 10 letter that Molten's counsel sent Baden a prototype of the "new" ball and that Molten planned to start shipping "replacement" balls on June 1, 2006. (Dkt. No. 132-3.)

ORDER - 2

counterclaims for declaratory relief, Baden claims that Molten's "redesigned" basketballs infringe the '835 patent. (Dkt. No.131.) In an answer to Baden's counterclaim, Molten denied that the "redesigned" basketballs infringe the '835 patent.[3] (Dkt. No. 146.)

The Court has issued a number of orders that are pertinent to this motion. First, in January 2007, the Court issued a claim construction order that defined the two disputed claim terms. The Court ordered that:

> (1) "Raised seams" means "a piece of material that is at a higher position than the sponge layer of the basketball."
>
> (2) "Strips of seam material" means "strips of seam material."

(Dkt. No. 202, Corrected Order at 1.) In March 2007, Molten filed a motion for summary judgment and argued that Baden's patent is invalid for obviousness. (Dkt. No. 132.) The Court denied Molten's motion, holding that because Molten failed to provide any evidence of the level of ordinary skill in the field of basketball design, Molten could not show that Baden's patent would be obvious to a person of ordinary skill in the art and therefore could not carry its burden of showing that Baden's patent is invalid for obviousness. (Dkt. No. 180, May 23, 2007 Order.)

Baden has now moved for partial summary judgment regarding infringement of the '835 patent. (Dkt. No. 170.) In its written motion, Baden sought a ruling that both the "old" and "new" basketballs infringe Baden's patent. Baden also requested a permanent injunction prohibiting Defendants, and those acting in concert with Defendants, from further advertising, offering for sale, selling, or using the infringing basketballs. Finally, Baden sought dismissal of Molten's Lanham Act counterclaim. But at oral argument, Baden acknowledged that the "new" basketball does not infringe. However, Baden argues that Molten continues to "offer to sell" its infringing basketball. Baden also conceded that its request for a permanent injunction was premature, but asked the Court to consider its request as one for a *preliminary* injunction. Molten opposes Baden's motion for

---

[3] The Court refers to Molten's "redesigned" ball as the "new" basketball, and refers to the ball that was the original target of Baden's complaint as the "old" basketball. The Court recognizes that multiple basketball model numbers fit within the "old" and "new" categories.

ORDER - 3

partial summary judgment. Molten argues that the "new" basketball does not infringe and that Baden's patent is invalid. Molten also raises a new Lanham Act claim against Baden.

## Discussion

### I. Standard on Summary Judgment

Baden has moved for summary judgment on its claim of patent infringement and on Molten's Lanham Act counterclaim. Summary judgment should be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Catrett, 477 U.S. at 325. If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).

### II. Infringement and Invalidity

Baden argues that Molten infringes Baden's '835 patent by making and selling, as well as offering to sell, its "Dual Cushion Technology" basketballs. Molten argues that its basketballs do not infringe and that the '835 patent is invalid. The Court considers the infringement and invalidity arguments in turn.

#### A. Infringement

Infringement of a patent is defined by 35 U.S.C. § 271(a). The statute provides, in pertinent part:

ORDER - 4

> Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefore, infringes the patent.

35 U.S.C. § 271(a). The Federal Circuit has specified a two-step analysis for determining infringement:

> The court must determine (1) the scope and meaning of the patent claims asserted, and (2) how the properly construed claims . . . compare[] to the allegedly infringing device. . . . Comparison of the claims to the accused device requires a factual determination that every claim limitation or its equivalent is found in the accused device. Because infringement is a question of fact, infringement is properly decided at summary judgment only when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device.

Int'l Rectifier Corp. v. IXYS Corp., 361 F.3d 1363, 1369 (Fed. Cir. 2004) (internal question marks and citations omitted).

In this case, the Court has already concluded the first step — it construed the asserted claim terms in its claim construction order. Thus, the question here is whether every element (i.e., claim limitation) of at least one claim in Baden's patent is present in Molten's "Dual Cushion Technology" basketballs. Only a single claim need be infringed to constitute infringement. Panduit Corp. v. Dennison Mfg. Co., 836 F.2d 1329, 1330 n.1 (Fed. Cir. 1987). But every limitation laid out in the patent claim must be found in the accused product to constitute literal infringement. General Mills, Inc. v. Hunt-Wesson, Inc., 103 F.3d 978, 981 (Fed. Cir. 1997). Baden argues that every limitation in Claim 3 of its '835 patent is present in Molten's "Dual Cushion Technology" basketballs.

### 1. "Old" Basketballs

First, Baden argues that every limitation in Claim 3 of the '835 patent is present in Molten's "old" basketball. Claim 3 states:

> A ball carcass for a padded inflatable ball, comprising: an inner carcass portion defining the shape of a ball, a cellular sponge layer surrounding the inner carcass portion, a plurality of raised seams defined by strips of a seam material, wherein the strips of seam material are bonded directly to the cellular sponge layer and the sponge layer underlies the strips of seam material, the seam material strips being arranged relative to the sponge layer so that areas of the sponge layer are exposed between the seam material strips, and wherein the inner carcass portion, the cellular sponge layer and raised seams together define the ball carcass.

ORDER - 5

1  (Phillips Decl., Ex. A.)  Molten has admitted that the following claim limitations are present in its G-
2  series basketballs: 1) a ball carcass for a padded inflatable ball, comprising; 2) an inner carcass portion
3  defining the shape of a ball; 3) a cellular sponge layer surrounding the inner carcass portion; and 4)
4  the sponge layer underlies the strips of seam material. (See Phillips Decl., Ex. AA, at 3-4.)

5        Baden argues that the remaining disputed elements are present in Molten's "old" basketball.
6  Baden points to a photograph of a cross-section of Molten's "old" basketball that visually depicts
7  each of the remaining elements. (See Plf.'s Mot. at 18.)  It appears from the photograph that
8  Molten's basketball contains (1) raised seams defined by strips of a seam material, (2) strips of seam
9  material bonded directly to the cellular sponge layer, (3) a sponge layer underlying the strips of seam
10 material, and (4) seam material strips arranged relative to the sponge layer so that areas of the sponge
11 layer are exposed between the seam material strips, wherein the inner carcass portion, the cellular
12 sponge layer and raised seams together define the ball carcass.  Thus, Baden has presented evidence
13 that indicates that Molten's "old" basketball contains every limitation in Claim 3 of Baden's '835
14 patent.

15       Although Molten originally disputed whether the remaining elements in Claim 3 were present
16 in Molten's basketball, (see Phillips Decl., Ex. AA, at 3-4) in their response to Baden's motion,
17 Defendants raise only a single issue with one of the elements.  Molten argues that its "old" basketball
18 used a "solid seam" and not a "strip of seam material."  Molten argues that there is a question of fact
19 "as to whether the narrow strips of seam material required by the claims of the '835 patent cover
20 Molten's 'solid seam.'" (Defs.'s Resp. at 2.)  But whether "strips of seam material" covers "solid
21 seams" is not a question of fact.  Indeed, Molten has not even attempted to present any evidence
22 indicating that a "solid seam" is not a "strip of seam material."  Whether "strips of seam material"
23 include "solid seams" is a question about the scope of the claim term — a question that needed to be
24 raised and decided as part of the Court's claim construction analysis.

25       Not only is it untimely, but Molten's argument also contradicts the Court's claim construction
26 order.  Molten previously argued as part of the claim construction process that Baden's patent was

ORDER - 6

limited to a design with strips of seam material with a raised portion that is not solid underneath, but rather, has foam underneath and within the raised portion of the seam. The Court rejected that argument and concluded that Baden's patent is not limited in that way. (Dkt. No. 202, at 8.) Thus, the Court anticipated that Baden's patent claim would cover both strips of seam material that are filled with foam <u>and</u> solid strips of seam material. Molten cannot argue at this stage that there is a material issue of law or fact regarding "strips of seam material."

Baden points to an e-mail from Molten's employee, Mr. Tatebe, to Molten U.S.A. CEO Kiyoaki Nishihara, in which Mr. Tatebe wrote: "There is infringement with regard to past manufacturing and sales." (Phillips Decl., Ex. D.) Baden argues that this e-mail is an admission that Molten's "old" basketball infringes. Molten argues that Baden has taken this statement out of context and that Mr. Tatebe was only explaining a "worst case scenario." (Dkt. No. 185-2, Nishihara Decl. ¶ 12.) The Court does not rely on Mr. Tatebe's e-mail as part of its infringement analysis.

Molten has presented no evidence suggesting that its basketball does not infringe the '835 patent. As the non-moving party, Molten has the burden of setting forth specific facts showing that there is some genuine issue of material fact for trial. <u>See</u> <u>Liberty Lobby</u>, 477 U.S. at 250. Because it has failed to do so, and because Baden has asserted and shown that every element in Claim 3 of the '835 patent is present in Molten's basketball, summary judgment on Baden's claim that Molten's "old" basketball infringes Baden's '835 patent is warranted.

### 2. "New" Basketballs / "Offer to Sell"

Baden acknowledged at oral argument that Molten's "new" design does <u>not</u> infringe Baden's '835 patent. Thus, the Court need not analyze whether Molten has raised any genuine issues about whether the "new" ball infringes. But in its reply brief, Baden argues that Molten continues to "offer to sell" infringing basketballs within the meaning of 35 U.S.C. § 271(a). The statute defines "offer for sale" or an "offer to sell" as "that in which the sale will occur before the expiration of the term of the patent." 35 U.S.C. § 271(i). As explained by the Federal Circuit in <u>3D Systems</u>, Congress added "offer[] to sell" to § 271(a) in part to prevent competitors from "generating interest in a potential

infringing product to the commercial detriment of the rightful patentee." <u>3D Systems, Inc. v. Aarotech Labs., Inc.</u>, 160 F.3d 1373, 1379 (Fed. Cir. 1998).  The offer need not be formal, but must "communicate[] a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." <u>MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.</u>, 420 F.3d 1369, 1376 (Fed. Cir. 2005) (internal quotation marks omitted).  In <u>3D</u>, the Federal Circuit concluded that because defendant's price quote letters contained a description of the allegedly infringing merchandise and the price at which it could be purchased, the letters were offers to sell. 160 F.3d at 1379.  Some district courts have concluded that mere advertisements directed to a national audience are not "offers to sell" within a particular forum. <u>See</u> <u>Intel Corp. v. Silicon Storage Tech., Inc.</u>, 20 F. Supp. 2d 690 (D. Del. 1998).  But a website that contains a detailed description of the allegedly infringing product and the product's price may constitute an "offer to sell." <u>See</u> <u>Biometrics v. New Womyn</u>, 112 F. Supp. 2d 869, 873 (E.D. Mo. 2000).

  Baden argues that Molten continues to "offer to sell" its infringing basketballs by continuing to describe its basketballs with the phrase "Dual Cushion Technology" and by using the same model numbers that Baden identified in its complaint on Molten's "new" basketballs.  Baden argues that because Molten is generating interest in the infringing product, it is immaterial whether Molten actually delivers the infringing product, or the "new" redesigned basketball.  Baden has presented evidence that Molten continues to "offer to sell" its infringing basketball.  Molten uses the phrase "Dual Cushion Technology" to describe a basketball with "(1) a high-density / high cushion foam between the surface and reinforcing layer; and (2) a special soft rubber in the panel seams." (Plf.'s Reply at 5; Compl. ¶ 15.)  Thus, it appears that the phrase "Dual Cushion Technology" describes that aspect of Molten's "old" basketball that infringes Baden's patent.  But even after Molten "redesigned" its basketball sold in the United States, Molten U.S.A. has continued to advertise "Dual Cushion Technology" basketballs for sale on its websites. (<u>See</u> Schindler Decl. ¶ 16.)  Molten Corp. continues to advertise "Dual Cushion Technology" basketballs for sale on its website without

ORDER - 8

distinguishing between U.S. and overseas sales. (Id.) Baden has also presented evidence that in April 2007, Molten sent a Texas school association a Molten GX6 basketball and directed the association to a third-party website that advertises and sells basketballs marked with the G-series model numbers and the words "Dual Cushion Technology." (Id. ¶¶ 12-14.) And Baden has presented evidence that other third-party retailers continue to advertise and offer for sale "Dual Cushion Technology" basketballs. (Id. ¶ 18.)

At oral argument, Molten did not dispute that a defendant violates § 271(a) by offering to sell an infringing product, even if the defendant delivers a non-infringing product. Instead, Molten focuses its defense on the limited geographic reach of the U.S. patent laws. Molten also argues that it cannot be held responsible for any third-party advertising of Molten's "Dual Cushion Technology." And Molten argues that it is not legally obligated to change the model numbers used to identify its basketballs, even though it changed the internal construction of the balls.

It is well-established that section 271(a) only reaches infringing activities that occur within the United States. MEMC, 420 F.3d at 1375. Courts have concluded that where a defendant offers to sell products abroad, even when the offer itself was made in the United States, § 271(a) is not violated. See, e.g., Cybiotronics, Ltd. v. Golden Source Elecs., Ltd., 130 F. Supp. 2d 1152, 1171 (C.D. Cal. 2001); Quality Tubing, Inc. v. Precision Tube Holdings Corp., 75 F. Supp. 2d 613, 622-25 (S.D. Tex. 1999). As the court explained in Quality Tubing, "[b]ecause a sale is infringing only if it occurs within the United States, an offer to sell is not infringement unless the contemplated sale is to occur in the United States." Quality Tubing, 75 F. Supp. 2d at 624.

The Court agrees that a defendant cannot be held liable for any sales or offers to sell products to consumers abroad. See id. But if Molten offers to sell infringing basketballs to U.S. consumers, even if the offer is made through a foreign website, Molten has "offer[ed] to sell" an infringing product in violation of § 271(a). See Multi-Tech Sys. v. VocalTec Commc's., Inc., 122 F. Supp. 2d 1046, 1051 (D. Minn. 2000) (holding that Israeli corporation engaged in allegedly infringing act when it offered to sell allegedly infringing product on its website); see also Biometrics, 112 F. Supp. 2d at

ORDER - 9

873 (holding that domestic website that contains description of product an product price is "offer to sell" under § 271(a)). Baden has presented some evidence that, even after Molten "redesigned" its basketball, Molten has continued to "offer to sell" "Dual Cushion Technology" basketballs to U.S. consumers through the Molten U.S.A. website, through personal communications, and through third-party retailers. But Molten has not had an opportunity to thoroughly respond to this evidence and argument. Although Baden offered evidence of Molten U.S.A.'s sales in its opening motion, Baden did not argue that Molten's "offer to sell" non-infringing basketballs violates § 271(a) until its reply brief. The Court will not decide this issue without giving Molten an opportunity to present a written response to Baden's argument. Summary judgment on this issue is therefore denied.[4]

**B.    Invalidity**

Molten argues that Baden's '835 patent is invalid. Patent invalidity is a defense that may defeat an infringement claim. See, e.g., Robotic Vision Sys., Inc. v. View Eng'g, Inc., 189 F.3d 1370, 1377 (Fed. Cir. 1999). Because a patent is presumed to be valid, the evidentiary burden to show facts supporting a conclusion of invalidity is one of clear and convincing evidence. AK Steel Corp. v. Sollac & Ugine, 344 F.3d 1234, 1238-39 (Fed. Cir. 2003). Molten raises two invalidity defenses in response to Baden's motion for infringement.

**1.    Obviousness**

A patent is invalid for obviousness "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). On May 23, 2007, the Court denied Molten's motion for summary judgment on the issue of obviousness. (Dkt. No. 180.) The Court denied the motion because Molten

---

[4] Because the Court does not decide whether Molten's "offer to sell" violates § 271(a), the Court does not address the more difficult questions of whether § 271(a) reaches Molten where third-party retailers continue to offer to sell "Dual Cushion Technology" basketballs. The Court notes that at least one court has suggested that sales and offers to sell through third-party retailers constitute infringement. See Multi-Tech Sys., 122 F. Supp. 2d at 1051. The Court also does not reach the question of whether Molten is legally obligated to change the model numbers on its "new" basketballs.

ORDER - 10

had provided no evidence of the level of ordinary skill in the field of basketball design. Now, as a defense to Baden's motion for infringement, Molten offers declarations from two individuals who claim that they have "ordinary skill in the art." Molten argues that the combination of Molten's '263 and '264 patents would have been obvious to a person of ordinary skill in the art, and for that reason, Baden's patent is invalid.

Molten argues that Kiyoaki Nishihara is a person with ordinary skill in the art of basketball design. Mr. Nishihara has presented a declaration in which he states that as a result of his education and subsequent on-the-job training, he considers himself to be "of ordinary skill in this very simple and easily understandable technology." (Nishihara Decl. ¶ 8.) But Mr. Nishihara's assertion that he is one with ordinary skill in the art is belied by his deposition testimony in which it appears that Mr. Nishihara is not well-versed in basketball design. For example, in response to a question about whether a certain patent depicted "dual cushion technology," Mr. Nishihara responded, "Well, I don't have any engineering background so even if I reviewed this [patent], I probably do not have a proper answer to your question." (Phillips Decl., Ex. U, at 114-15.) Then Mr. Nishihara and Baden's counsel engaged in the following exchange:

> Q: Sure. Would you agree with me that there is a foam layer underneath the seam in that drawing?
>
> A: Underneath the seam, no, I don't. Or I am — I don't know. It appears to me that the seam itself is a cushion layer. . . .
>
> Q: Isn't that underneath the seam?
>
> A: No. The seam itself seems to be the foam layer. Well, first of all, I do not know what the seam exactly means ... but again, I do not know. I have no idea.

(Id. at 116.)

Not only has Mr. Nishihara admitted in deposition that he is not skilled enough in the art to identify "dual cushion technology" or "seams," he also admitted in his deposition that, at least as of March 28, 2007, he had never even read the '263 or '264 patents. (Seffernick Decl., Ex. F, at 234.) Nowhere in his deposition or declaration does Mr. Nishihara state that it would have been obvious to him to combine elements of the '263 and '264 patents. Mr. Nishihara's declaration and deposition

ORDER - 11

therefore do not support Molten's assertion that a person with ordinary skill in the art would have known to combine elements of the '263 and '264 patents.

But Molten also presents the declaration of Craig Barker. Mr. Barker has a bachelor's degree in business from Brigham Young University where he took classes including basic physics, basic chemistry and basic science. (Barker Decl. ¶ 4.) Mr. Barker spent twelve years in the inflatable ball industry, including learning about the construction and manufacture of inflatable balls, and considers himself to be skilled and knowledgeable in the art of basketball construction. (Id. ¶ 7.) Mr. Barker states in his declaration that he has reviewed Molten's Japanese Patents, '263, '264, and '253. He states: "The seam and foam layer [indicated in the Japanese Patents] are thus well known old structure parts and the reconfiguration of these parts *e.g.* by placing the seam of '263 in the grove of '264 would be obvious to one of my level of skill in basketball construction." (Id. ¶ 8.) This testimony presents a genuine issue of material fact on the issue of patent invalidity.

Baden does not refute this testimony with evidence, but argues that Mr. Barker is not an "independent" expert because he worked for Molten Corp. from 1992-2004, during the last seven years of which he served as President of North American Operations. (See Seffernick Decl., Ex. D.) But Baden has not requested that the Court strike Mr. Barker's testimony, and Baden has not established how Mr. Barker's former employment with Molten undermines his declaration. Therefore, Molten has raised an issue of fact on the issue of obviousness.

**2.     Written Description and Enablement Requirements**

Molten also argues that Baden's patent is invalid for failing to meet the written description and enablement requirements under 35 U.S.C. § 112. That section requires the following:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

35 U.S.C. § 112. The "enablement" requirement "is satisfied when one skilled in the art, after reading the specification, could practice the claimed invention without undue experimentation."

ORDER - 12

1  Liebel-Flarsheim Co. v. Medrad, Inc., 481 F.3d 1371, 1378 (2007).  The "written description"

2  requirement "implements the principle that a patent must describe the technology that is sought to be

3  patented; the requirement serves both to satisfy the inventor's obligation to disclose the technologic

4  knowledge upon which the patent is based, and to demonstrate that the patentee was in possession of

5  the invention that is claimed."  Capon v. Eshhar, 418 F.3d 1349, 1357 (Fed. Cir. 2005).

6        Molten argues that Baden's basketball cannot be made according to the teachings of the '835

7  patent.  But Molten has offered absolutely no evidence to support this claim.  Molten bases its

8  argument solely on the fact that Baden (allegedly) has refused to produce a cross-section of a Baden

9  basketball that represents Figure 3 in the '835 patent.[5]  But Molten's discovery dispute is not itself

10 "evidence" that raises a genuine issue of material fact on summary judgment.  Molten has failed to

11 raise a genuine issue of material fact regarding the written description or enablement requirements for

12 patent validity.

### C. Conclusion on Infringement and Invalidity Issues

14       In an infringement suit where defendant brings a counterclaim for invalidity, the court must

15 enter final judgment on both issues.  See, e.g., Baxter Healthcare Corp. v. Spectramed, Inc., 49 F.3d

16 1575, 1585 (Fed. Cir. 1995).  Here, Baden has never affirmatively moved on Molten's counterclaim

17 for invalidity.  Thus, the issue of invalidity remains for trial.  Moreover, in addition to being an

18 affirmative claim, patent invalidity is a defense to infringement.  See 35 U.S.C. § 282.  Here, Molten

19 has raised a material issue of fact regarding invalidity.  Thus, the Court cannot enter a final judgment

20 on infringement.

21       Nevertheless, considering the effort that the parties have expended in briefing these issues, the

22 Court concludes that it is appropriate to enter partial summary judgment.  The Court GRANTS

23 partial summary judgment to Baden on Baden's claim that Molten's "old" basketball infringes

24 Baden's '835 patent.  But the Court DENIES summary judgment on Baden's claim that Molten

---

[5] It appears from the record that Baden actually did make available to Molten a cross-section of its basketball. (See An Decl., Ex. B, at 105.)

ORDER - 13

continues to "offer to sell" infringing basketballs. The question of whether Baden's '835 patent is invalid remains for trial. If the jury decides that Baden's patent is invalid, the Court will necessarily amend its judgment regarding Molten's past infringement of the '835 patent.

### III. Injunctive Relief

#### A. Permanent Injunction

Baden seeks a permanent injunction prohibiting Defendants, and any third party, from selling or offering to sell, basketballs that infringe Baden's '835 patent. To obtain a permanent injunction, a plaintiff must show the existence of four factors: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 126 S. Ct. 1837, 1839 (2006). But these factors presuppose that the party seeking the permanent injunction is a prevailing party. See id. at 1838. And to prevail in a patent infringement action where the issue of patent validity is properly raised, the Court cannot render a final judgment without having the issue of patent validity decided. See Baxter Healthcare, 49 F.3d at 1585. Because Baden never moved on Molten's invalidity counterclaim, and because Molten has raised genuine issues in this motion regarding obviousness, Baden's request for permanent injunctive relief is premature.

#### B. Preliminary Injunction

At oral argument, Baden asked that the Court construe its request for injunctive relief as a request for a *preliminary* injunction. To obtain a preliminary injunction, the moving party must establish that: "(1) it has a reasonable likelihood of succeeding on the merits; (2) it will suffer irreparable harm if the injunction is not granted; (3) the balance of hardships tips in its favor; and (4) an injunction would be consistent with the public interest." Helifix, Ltd. v. Blok-Lok, Ltd., 208 F.3d 1339, 1350-51 (Fed. Cir. 2000). "A patent holder seeking a preliminary injunction bears the burden of establishing a likelihood of success on the merits with respect to the patent's validity. Id. at 1351.

"The presumption of the patent's validity created by 35 U.S.C. § 282 (1994 & Supp. III 1997) does not relieve a patentee who moves for a preliminary injunction from carrying the normal burden of demonstrating that it will likely succeed on all disputed liability issues at trial, even when the issue concerns the patent's validity." Id. (internal quotation marks omitted). If the alleged infringer raises a substantial question concerning validity, the preliminary injunction should not issue. Id. "[T]he showing of a substantial question as to invalidity . . . requires less proof than the clear and convincing showing necessary to establish invalidity itself at trial." Entegris, Inc. v. Pall Corp., 2007 U.S. App. LEXIS 13812, at *32 (Fed. Cir. June 13, 2007) (quoting Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed. Cir. 2001)).

As mentioned above, Molten has raised a genuine issue regarding invalidity by offering a declaration from an individual who claims that he has ordinary skill in the art, and that it would have been obvious to someone of his skill level to combine elements of two of Molten's Japanese patents to create Baden's patented design. (See Barker Decl. ¶ 8.) Because Mr. Barker's declaration raises a substantial question of whether Baden's '835 patent is valid, Baden has not established that it is likely to prevail on the merits of its claims at trial. A preliminary injunction is not warranted.

Even if Molten had not raised a substantial question regarding invalidity, it is unlikely that the Court would issue a preliminary injunction. Trial in this matter is scheduled to begin in less than four weeks. (See Dkt. No. 36.) Baden has offered no evidence of irreparable harm that will occur in the period of time between when this order issues and final judgment is entered. Baden argues that "Baden has suffered irreparable harm from Defendants' theft of Baden's design, followed by their advertising of Baden's design as their proprietary "'Dual Cushion Technology.'" (Plf.'s Mot. at 20.) But that is harm that has occurred, and may be ongoing. It is not a new harm that must be enjoined in the intervening weeks before trial. Baden has informed the Court that the "2007 FIBA Americas Championship" is scheduled to be held in Las Vegas, Nevada, in August 2007. Baden suggests that it will be irreparably harmed by the advertising for Molten basketballs that will occur through that event. But Baden has not presented any evidence that Molten intends to advertise its "Dual Cushion

ORDER - 15

Technology" basketballs at the FIBA Americas Championship. The Court denies Baden's request for a preliminary injunction.

**IV.    Molten's Lanham Act Counterclaims**

In its answer to Baden's Third Amended Complaint, Molten brought a counterclaim for trademark infringement under the Lanham Act. In the counterclaim, Molten identified a letter Baden mailed to all Team Dealers in Ohio in February 2007 that contained allegedly "false statements with respect to Molten U.S.A.'s volleyball pricing and sales practices." (Dkt. No. 123 ¶ 72.) The letter states, in pertinent part:

> Dear Ohio Dealer,
>
> Wouldn't it be nice to sell in a world free of ball adoptions?
>
> With your support, you will see, this is exactly what we intend to do in Ohio — sell as if there is no adoption. <u>As you know, prices for virtually all adopted game balls are inflated to cover the dramatically escalating costs of adoptions</u>, which both reduce your margins and increase the prices to tax supported schools. . . .
>
> <u>Remember, by simply selling a Molten volleyball, few, if any, of which have been sold through the traditional team dealer network in Ohio, you are likely perpetuating the adoption process and therefore limiting, if not entirely eliminating, your profit margins in the future.</u>

(Dkt. No. 114-2.) In its counterclaim, Molten quotes the above underlined text from the letter. Molten asserts that those statements are false representations of fact made in commercial advertising that are likely to injure Molten. Baden moves for dismissal of this counterclaim. Baden argues that Molten's selective quote from the letter misrepresents the letter as a whole. Baden also argues that Molten has no evidence, aside from the letter itself, to support its claim of false advertising.

In response, Molten offers <u>no evidence</u> to support its claim of false advertising regarding the quoted language.[6] Indeed, Molten does not even mention the false advertising claim plead in its

---

[6] In an earlier filing, Molten presented evidence of the letter itself. (<u>See</u> Dkt. No. 114-2, An Decl., Ex. A.) But Molten has offered no evidence that the statements in the letter are false, that they deceived the readers, that the statements are likely to influence Team Dealers' purchasing decisions, or that Molten has been or is likely to be injured as a result of the false statement. <u>See Southland Sod Farms v. Stover Seed Co.</u>, 108 F.3d 1134, 1139 (9th Cir. 1997) (listing elements of Lanham Act § 43(a) false advertising claim).

ORDER - 16

counterclaim. Instead, Molten raises an entirely new claim. Molten argues that on the flier attached to the February 2007 letter, Baden included a photograph of a Baden volleyball bearing the registered logo of the Ohio State Volleyball Coaches Association and the Ohio High School Athletic Association. Molten argues that Baden's limited license to use these logos expired on December 31, 2006, and that Baden continued to use the logo without authorization.

The Court will not consider this new claim. Molten has not plead this trademark violation in a counterclaim. A party cannot amend its pleadings through arguments in an opposition brief to a motion for summary judgment. Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996).

The Court agrees with Baden that Molten's counterclaim misrepresents the overall message of Baden's letter. Because the false advertising claim as originally plead has little merit, and because Molten has failed to present any evidence in support of that claim, the Court grants summary judgment to Baden on this issue and dismisses Defendants' Lanham Act counterclaim.

**Conclusion**

Baden brought this motion to establish infringement, obtain a permanent injunction, and dismiss Molten's Lanham Act counterclaim. Molten has failed to raise a genuine issue of material fact regarding infringement of its "old" basketballs. The Court GRANTS partial summary judgment to Baden on the issue of whether Molten's "old" basketballs infringe Baden's '835 patent. Baden also argues that Molten infringes by continuing to "offer to sell" infringing balls, even though the delivered product may not infringe. Because Molten has not had an opportunity to respond to this argument, summary judgment on the "offer to sell" issue is denied.

Molten has also raised a genuine issue regarding invalidity. Whether Baden's '835 patent is invalid, on obviousness, or other, grounds, remains an undecided issue. If Molten prevails on its invalidity claim at trial, the Court will amend its judgment that the "old" basketballs infringe.

The Court DENIES Baden's request for a permanent injunction as premature. The Court also DENIES Baden's request for a preliminary injunction because Molten has raised substantial questions

about the validity of Baden's patent and because Baden has failed to show that it will be irreparably harmed between now and trial, which is scheduled to begin in less than four weeks.

Finally, the Court GRANTS Baden's motion to dismiss Molten's counterclaim. Because Molten has not amended its pleading, the Court will not consider Molten's entirely new claim raised in opposition to Baden's motion.

The clerk is directed to send copies of this order to all counsel of record.

Dated: July 16th, 2007.

Marsha J. Pechman
United States District Judge

ORDER - 18