UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BADEN SPORTS, INC.,

    Plaintiff,

v.

KABUSHIKI KAISHA MOLTEN (DBA MOLTEN CORPORATION) AND MOLTEN U.S.A. INC.,

    Defendants.

No. C06-210MJP

ORDER GRANTING IN PART DEFENDANTS' MOTION TO LIMIT TESTIMONY OF BADEN'S EXPERT WITNESSES SCOTT HAMPTON AND RICHARD YALCH

This matter comes before the Court on Defendants' motion to limit the testimony of Baden's expert witnesses Scott Hampton and Richard Yalch. (Dkt. No. 229.) Plaintiff Baden opposes the motion. (Dkt. No. 243.) Having considered the motion and response, the reply (Dkt. No. 249), and all documents submitted in support thereof, the Court GRANTS IN PART and DENIES IN PART Defendants' motion.

Defendants ask that pursuant to Federal Rule 37(c), the Court limit the testimony of Baden's expert witnesses Hampton and Yalch to the opinions expressed in their February 2007 expert reports. Federal Rule 37(c) provides:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

Federal Rule 26(a) requires disclosure of expert testimony in the form of an expert report. Fed. R. Civ. P. 26(a)(2)(B). Federal Rule 26(e) requires an expert to supplement information contained in his

ORDER - 1

report and information provided during his deposition. Fed. R. Civ. P. 26(e)(1). Any such supplementation shall be disclosed by the time the party's disclosures under Rule 26(a)(3) are due, which in this case was June 25, 2007, the day Plaintiff's Pretrial Statement was due. See Local Civil Rule 16(h).

Regarding the testimony and report of expert Scott Hampton, exclusion is warranted. Plaintiff served on Defendants Mr. Hampton's report on February 21, 2007. In his report, Mr. Hampton states that he was asked by Plaintiffs to "evaluate the economic damages suffered by Baden arising from Molten's alleged patent infringement, unfair competition and other claims in Baden's Third Amended Complaint." (Phillips Decl., Ex. 3, at 3.) On page 12 of that report, Mr. Hampton summarizes his opinions, which included the following estimates of damages: $144,157 royalty base for patent infringement, $65,909 unjust enrichment, and the net present value of the FIBA contracts in the amount of $2,114,091 for the 2003 agreement, and $5,940,488 for the 2007 agreement. (Id., at 12.) Mr. Hampton went on to state that he had not yet calculated a royalty rate that will compensate Baden for Molten's patent infringement because Molten had not yet provided copies of its financial statements and other financial and licensing information. (Id. at 14.) He stated that he "plan[ned] to supplement this report with a reasonable royalty damage number in a later report. (Id.)

On March 16, Defendants supplemented their numbers of dual-cushion technology basketballs sold in the United States. (Phillips Decl., Ex. 4.) On April 11, in response to the Court's order compelling production, Defendants supplemented their sales figures by providing worldwide numbers. (Id., Ex. 5.) On April 12, Defendants deposed Mr. Hampton. On April 25, pursuant to Court order, Defendants supplemented their earlier answer to Baden's interrogatory by providing worldwide sales figures for basketballs employing "new" or current technology. (Id., Ex. 6.) On July 18, when it filed its response to Molten's motion, Baden requested leave to file a supplemental Hampton report, in which Mr. Hampton will apply his previously disclosed methodology to the numbers provided after his original report by Defendants. Trial is scheduled to begin on August 6, 2007.

ORDER - 2

1    Although Defendants provided all necessary information by April 25, Mr. Hampton has not yet provided a supplemental report.  Under Federal Rule 26(e)(1), Baden was required to supplement Mr. Hampton's disclosure no later than June 25, 2007.  This delay of over three months is not justifiable.  Once Molten produced additional disclosures in April, Baden should have promptly supplemented Mr. Hampton's expert report.  Baden's offer to allow Molten to depose Mr. Hampton again, now six days before the start of trial, does not remedy the prejudice created by this late disclosure.  Because Baden's late disclosure is not justified, and because new disclosure at this late date would be prejudicial, the Court ORDERS that Mr. Hampton's testimony shall be limited to the information and opinions expressed in his expert report and during his deposition.  See Fed. R. Civ. P. 37(c)(1).

Molten also moves to limit both experts' testimony on the basis that "neither expert's report provided an opinion ... that Molten's payments to FIBA are a measure of Baden's damages." (Def.'s Reply at 5.)  But both of these experts, in their reports and in their depositions, discussed using Molten's payments to FIBA as a proxy for the benefit that Molten received for wrongfully advertising "dual cushion technology."  Mr. Yalch's report states:

> [O]ne can look at Molten's marketing to see how much was invested in marketing the dual cushion technology feature to estimate what this is worth to Molten. . . . Molten's willingness to pay FIBA $3.5 million over the period 2003-2006 (Molten-FIBA agreement of 1/1/2003), $18 million over the period 2007-2016 (Molten FIBA agreement of 7/31/2005) and $100,000 to USAB for [a] single tournament are indicators that the company expected a substantial financial benefit from promoting this feature in these events."

(Phillips Decl., Ex. 3, at 3; see also Yalch Dep., pp. 99-100, 162.)  Likewise, Mr. Hampton's report identifies the amount that Molten paid for sponsorship agreements with FIBA and reduced it to its net present value. (Phillips Decl., Ex. 3, pp. 18-22.)  And in his deposition, he testified that one theory of Lanham Act damages in this case "could be ... that the amount spent for the sponsorship is the amount of benefits." (Id., Ex. 7, p. 152.)  He referred to that amount as a "conservative estimate." (Id.)  Thus, both of Baden's experts have opined that Molten's payments to FIBA are a measure of

ORDER - 3

1  Baden's Lanham Act damages. Although the testimony of both experts is limited to the information

2  and opinions disclosed in the report and deposition, both experts may testify about Baden's damages.

3        For these reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART.

4        The clerk is directed to send copies of this order to all counsel of record.

5        Dated: August 1st, 2007.

                                                  Marsha J. Pechman
                                                  United States District Judge