1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BADEN SPORTS, INC.

                           Plaintiff,

v.

KABUSHIKI KAISHA MOLTEN (DBA
MOLTEN CORPORATION) and MOLTEN
U.S.A., INC.,

                           Defendants.

No. C06-210MJP

ORDER REGARDING BADEN'S
REQUEST FOR ENTRY OF FINAL
JUDGMENT AND PERMANENT
INJUNCTION AND DEFENDANTS'
REQUEST FOR REMEDIES-
SPECIFIC EVIDENTIARY
HEARING

        This matter comes before the Court on Plaintiff's motion for entry of judgment (Dkt. No.

323) and Defendants' motion for a remedies-specific evidentiary hearing (Dkt. No. 336).  On

September 4, 2007, the Court requested that the parties submit additional briefing on the issues of

enhanced damages and attorneys' fees. (Dkt. No. 343.)  The parties have submitted those briefs (Dkt.

Nos. 345 & 346) and these issues are now ripe for the Court's consideration.  Having considered the

parties' papers and the record herein, the Court ORDERS as follows:

                                        **Background**

        Defendants Kabushiki Kaisha Molten and Molten U.S.A. (hereinafter "Molten") and Plaintiff

Baden Sports are competitors in the sports ball business.  In the 1990's, Baden developed and

patented a new game-quality basketball that is "cushioned" or "padded." (Third Amended Complaint

[hereinafter Compl.] ¶ 10.)  In February 2006, Baden sued Molten for patent infringement and false

advertising.  Baden alleged that Molten's "dual cushion technology," which Molten incorporated into

ORDER - 1

1    a number of its basketball models, duplicated Baden's patented design.  Baden also alleged that

2    Molten falsely advertised that its basketball design was "innovative," in violation of the Lanham Act.

3    Before trial, the Court granted summary judgment to Baden on the issue of whether Molten's "dual

4    cushion" basketball infringed Baden's U.S. Patent No. 5,636,835 ("the '835 patent"). (Dkt. No. 236.)

5    During trial, the Court directed a verdict in favor of Baden on the issue of invalidity.  The Court ruled

6    that because the Court had excluded key Molten witnesses and evidence, Defendants could not prove

7    that the '835 patent was invalid.  On August 16, 2007, the jury found that Molten had continued to

8    offer for sale the infringing "dual cushion" basketball, that Molten willfully infringed Baden's patent,

9    and that Molten had intentionally falsely advertised its basketballs. (Dkt. No. 321.)  The jury awarded

10   Baden $38,031.00 in patent infringement damages and $8,054,579.00 in Lanham Act damages. (<u>Id.</u>)

11   Baden now seeks enhanced damages, attorneys' fees, prejudgment interest, and a permanent

12   injunction.  Molten opposes the motion and requests a remedies-specific evidentiary hearing.

**Discussion**

### I.    Permanent Injunction

15        Pursuant to both 35 U.S.C. § 283 and 15 U.S.C. § 1116(a), Baden requests that the Court

16   enjoin Molten from further infringement of the '835 patent and from continued false advertising.

17   Specifically, Baden requests that the Court enjoin Molten from selling or offering to sell the infringing

18   "dual cushion" basketballs in the United States, from using for its basketballs the model numbers

19   identified in Baden's complaint, and from advertising its "dual cushion" basketball as "innovative" or

20   as a "Giuarigo" design.  Molten argues that the requested injunction is too broad.  Molten has

21   proposed an injunction that only enjoins Molten from selling or offering to sell "dual cushion"

22   basketballs in the United States, and from advertising in the United States the "dual cushion"

23   basketball as "innovative." (<u>See</u> Dkt. No. 335-2.)

24        The parties agree that the Court's permanent injunction analysis should be governed by the

25   four factors recently reiterated in <u>eBay Inc. v. MercExchange, LLC</u>, 126 S. Ct. 1837, 1839-40 (2006)

26   (holding that traditional four-factor test for permanent injunctions applies to patent actions); <u>see also</u>

1    Reno Air Racing Ass'n v. McCord, 452 F.3d 1126, 1137-38 (9th Cir. 2006) (holding that eBay test

2    applies to permanent injunctions under the Lanham Act). Thus, a Plaintiff must demonstrate:

3              (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as
               monetary damages, are inadequate to compensate for that injury; (3) that, considering
4              the balance of hardships between the plaintiff and defendant, a remedy in equity is
               warranted; and (4) that the public interest would not be disserved by a permanent
5              injunction.

6    eBay, 126 S. Ct. at 1839.  The Court considers each factor in turn, in light of the evidence presented

7    at trial.

8              **A.     Irreparable Injury**

9              The Court ruled on summary judgment that Molten's "dual cushion" design infringed Baden's

10   '835 patent, which covered the entire internal construction of the basketball.  Where a defendant's

11   infringement is not limited to a minor component of plaintiff's patented product, irreparable harm is

12   likely. See IMX, Inc. v. Lendingtree, LLC, 469 F. Supp. 2d 203, 225 (D. Del. 2007).  The jury also

13   found that Molten continued to offer for sale infringing basketballs and that Molten's infringement

14   was willful.  And the jury found that Molten intentionally falsely advertised its basketballs.  Most of

15   the false advertising evidence presented at trial involved Molten's advertising of its basketballs as

16   "innovative."  The evidence also established that Baden and Molten are direct competitors, and that,

17   if not enjoined, Molten's infringement and false advertising may  harm Baden.  Baden's CEO,

18   Michael Schindler, specifically testified that, because of Molten's infringement and false advertising,

19   Baden risks loss of its good will with consumers and retailers.  Baden has established, through

20   evidence presented at trial, that without an injunction, consumers will continue to be deceived by

21   Molten's advertising that its design is innovative, and Baden risks continued loss of its good will.[1]

22             In contrast, Baden has not established that it will be irreparably injured by Molten's continued

23   use of the same model numbers on its basketballs or by advertising of the "Giugiaro" design

24

_____

25         [1]      Molten argues that any showing of irreparable injury is undermined by Baden's willingness
     to license the patents-in-suit. See IMX, 469 F. Supp. at 225.  But even if Baden were willing to offer
26   such licenses, Baden still risks loss of good will because, as Mr. Schindler testified, Molten's infringement
     and advertising erode consumers' and retailers' perception of Baden as an innovator.

ORDER - 3

basketball.  Molten presented evidence indicating that its model numbers do not correlate to the infringing "dual cushion" design, but instead refer to the type of ball, cover material, and size.  Thus, there is little risk that consumers will be deceived by the continued use of those model numbers.  In addition, whether advertising of the "Giugiaro" design violated the Lanham Act was not an issue at trial.  Neither Plaintiff's portion of the Amended Pretrial Order, nor the Final Jury Instructions mention advertising of the "Giugiaro" design. (See Dkt. Nos. 290 & 312.)  And the evidence presented regarding the "Giugiaro" design indicated that such design relates to the exterior appearance of the basketballs, not their internal construction.  The evidence presented at trial does not support Baden's argument that it will be irreparably injured if the Court does not enjoin the use of certain model numbers or advertising of the "Giugiaro" design.

### B.    Inadequate Remedies at Law

The jury awarded Baden monetary damages under the Patent Act and the Lanham Act.  As Mr. Schindler indicated in his testimony at trial, continued infringement and false advertising will continue to erode the good will that Baden has created with its customers and retailers.  The Court concludes that the monetary damages awarded are inadequate to remedy such a loss.

### C.    Balancing of Hardships

The balance of hardships weighs in favor of Baden.  First, the evidence presented at trial established that Baden's sales are focused in the United States, whereas Molten's sales are focused elsewhere.  Second, the Court intends only to enjoin those activities that the jury found to be infringing or constituting false advertising.  Given that Molten claims that it has already ceased selling or advertising its "dual cushion" basketballs in the United States (see Dkt. No. 335, Def.'s Opp. at 4), the same court-imposed restriction will not impose any additional hardship on Molten.

### D.    Public Interest

The public interest is served by upholding the patent and trademark laws — by entering an injunction that prohibits further willful infringement and intentional false advertising.  Particularly, the

1    public interest will be served by prohibiting continued deception of consumers regarding the

2    innovativeness of Molten's infringing design.

3         **E.      An Injunction Is Warranted**

4         Considering all of the <u>eBay</u> factors, the Court concludes that Baden is entitled to a limited

5    permanent injunction.  The Court has narrowly tailored its injunction so as not to place unnecessary

6    restraints on Molten's lawful foreign business activity.  However, the Court's jurisdictional reach is

7    broader than Defendants contend. <u>See Reebok Int'l v. Marnatech Enters., Inc.</u>, 970 F.2d 552 (9th

8    Cir. 1992).  Given the complexities of online advertising, and the evidence presented at trial regarding

9    Molten's internet advertising of its "dual cushion" technology, the Court enjoins, not only false

10   advertising *within* the United States, but false advertising *directed at* United States consumers.

11        IT IS THEREFORE ORDERED that, pursuant to 35 U.S.C. § 283, Kabushiki Kaisha Molten

12   (dba Molten Corporation) and Molten U.S.A., its officers, agents, servants, employees, and attorneys,

13   and those persons in active concert or participation with them who receive actual notice of the order

14   by personal service, or otherwise, are hereby restrained and enjoined during the term of United States

15   Patent No. 5,636,835 (the '835 patent) from making, using, offering to sell, selling, or importing into

16   the United States (as defined in 35 U.S.C. § 271(a)) or causing to be made, used, offered for sale, or

17   sold or imported into the United States all basketballs utilizing the "dual cushion" technology claimed

18   in the '835 patent.

19        IT IS FURTHER ORDERED that Kabushiki Kaisha Molten (dba Molten Corporation) and

20   Molten U.S.A., its officers, agents, servants, employees, and attorneys, and those persons in active

21   concert or participation with them who receive actual notice of the order by personal service, or

22   otherwise, are hereby restrained and enjoined from advertising to United States consumers the

23   Molten "dual cushion" basketball as "innovative."

24   **II.    Enhanced Damages**

25        Baden seeks enhanced damages for Molten's infringement of the '835 patent.  Pursuant to 35

26   U.S.C. § 284, the Court may "increase the [patent infringement] damages up to three times the

amount found or assessed." To support an enhanced damages award, the fact-finder must determine that the defendant has willfully infringed; however, such a finding does not mandate that the court award enhanced damages. Transclean Corp. v. Bridgewood Servs., Inc., 290 F.3d 1364, 1378 (Fed. Cir. 2002). Enhanced damages are punitive in nature. See Beatrice Foods Co. v. New England Printing & Lithographing Co., 923 F.2d 1576, 1580 (Fed. Cir. 1991). Whether and to what extent the damages award should be increased is within the Court's sound discretion. Jurgens v. CBK Ltd., 80 F.3d 1566, 1570 (Fed. Cir. 1996) (holding that the fact-finder should first determine whether an infringer is guilty of conduct upon which damages may be increased, and second, exercising its discretion, whether and to what extent to increase the damages award). The Federal Circuit has outlined nine factors for the Court to consider in making its enhanced damages determination:

(1)   whether the infringer deliberately copied the ideas or design of another;
(2)   whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed;
(3)   the infringer's behavior as a party to the litigation;
(4)   the infringer's size and financial condition;
(5)   the closeness of the case;
(6)   the duration of the infringer's misconduct;
(7)   any remedial action by the infringer;
(8)   the infringer's motivation for harm; and
(9)   whether the infringer attempted to conceal its misconduct.

Johns Hopkins Univ. v. CellPro, Inc., 152 F.3d 1342, 1352 n.16 (Fed. Cir. 1998) (citing Read Corp. v. Portec, Inc., 970 F.2d 816, 827 (Fed. Cir. 1992)). In both the enhanced damages and attorneys' fees contexts, in a case, like this one, where the jury has found willful infringement, a trial court "should provide reasons for not increasing a damages award or for not finding a case exceptional for the purpose of awarding attorneys fees." Jurgens, 80 F.3d at 1572.

Baden argues that the jury's finding of willful infringement, coupled with Molten's litigation misconduct, warrants a trebling of the patent damages. The Court considers Baden's request in light of the nine Read factors.

(1)   **Deliberate Copying.** Baden argues that the facts presented at trial, including the evidence of infringement, the lack of evidence explaining the origination of the "dual cushion"

ORDER - 6

1   basketball, and Molten U.S.A.'s President's previous employment at Baden Sports, point to

2   deliberate copying.  The Court disagrees.  Molten presented evidence establishing that it did not learn

3   of Baden's patent until shortly before Baden filed suit.  The Court will not draw unsupported

4   inferences from gaps in the evidence presented.  This factor does not weigh in favor of Baden.

5          (2)     **Good Faith Belief Regarding Defenses.**  Although Defendants argued that Baden's

6   patent was invalid in their briefs, they presented no evidence of invalidity at trial.  Baden suggests that

7   the Court should infer from the failure to present evidence that Defendants did not have a good faith

8   belief regarding their invalidity defenses.  However, Molten's inability to prove invalidity was a result

9   of inadequate lawyering resulting in the exclusion of testimony and evidence, rather than an actual

10  lack of evidence.  Indeed, Molten presented evidence at trial suggesting that its technical department

11  advised Molten that there was a very good chance that the '835 patent was invalid.  Therefore, this

12  factor does not weigh in favor of Baden.

13         (3)     **Litigation Conduct.**  Baden argues that Molten engaged in litigation misconduct by

14  (1) evading service even though it was represented by U.S. attorneys; (2) abusing the discovery

15  process, requiring Baden to file motions to compel and a Colorado subpoena of third-party

16  documents; (3) filing a baseless counterclaim; and (4) failing to disclose witnesses and evidence in a

17  timely fashion.  Baden also argues that Molten caused the Court to conduct an unnecessary Markman

18  hearing, because Molten had already internally acknowledged infringement.  But the evidence

19  presented was not conclusive regarding whether Molten internally believed it infringed.  And what

20  was unusual about this case was not the evidence in the case, but the inability of Defendants' counsel

21  to present the facts in compliance with the local and federal procedural rules.  Defendants' counsels'

22  ineffectiveness resulted in key witnesses and evidence being excluded from trial.  But because

23  counsels' ineffectiveness accrued to Plaintiff's benefit, this factor does not weigh in favor of Plaintiff.

24         (4)     **Defendants' Size / Financial Condition.**  Baden argues, and Molten does not

25  dispute, that Molten is the largest inflatable ball manufacturer in the world.  Thus, this factor weighs

26  in favor of Baden.

1        (5)     **Closeness of Case.**  The parties dispute whether this case was close.  At the

2 commencement of this suit, Molten disputed Baden's claims of infringement and false advertising, and

3 Molten asserted an affirmative defense and counterclaim of patent invalidity.  Just before trial, the

4 Court concluded on summary judgment that the "dual cushion" basketball infringed; during trial,

5 because the Court excluded Defendants' invalidity witnesses, Defendants failed to offer any evidence

6 of invalidity.  It was Defendants' failure to present evidence or witnesses regarding invalidity that

7 prevented this case from being a close one.  This factor is therefore neutral.

8        (6)     **Duration of Misconduct.**  Molten sold the "dual cushion" ball to U.S. consumers for

9 a three year period before Baden filed its suit.  Molten continued to offer for sale infringing balls

10 through the Molten U.S.A. website, although the evidence presented at trial suggests that this

11 continuation may have been due to an oversight.  This factor does not weigh in favor of either party.

12        (7)     **Remedial Action Taken by Defendants.**  Baden conceded at trial that Molten

13 changed to a non-infringing design after commencement of this lawsuit.   Nevertheless, Baden argues

14 that this factor does not favor Molten because Molten did not change its own (or third party)

15 advertising or model numbers.  The Court concludes that because Molten changed its entire design,

16 this factor weighs in favor of Molten.

17        (8)     **Defendants' Motivation for Harm.**  Baden points to Molten U.S.A. CEO Kiyoaki

18 Nishihara's testimony that the "dual cushion" basketball was an upgrade from previous designs and

19 that he himself came to the United States to increase Molten's market share as indicative of

20 Defendants' motivation for harm.  But evidence that Molten hoped to increase its own market share

21 does not indicate that Molten intended to harm Baden specifically.  This factor does not benefit

22 Baden.

23        (9)     **Attempt to Conceal Misconduct.**  Baden points to no evidence that Molten intended

24 to conceal its infringement; instead, Baden points to the fact that Defendants failed to prove their

25 design change at trial.  But Molten had no incentive to prove its design change at trial because Baden

26

1   was not alleging infringement of the new design.  Because Baden has not shown an attempt to

2   conceal, this factor does not benefit Baden.

3       Although the jury found that Molten "willfully infringed" Baden's '835 patent, analyzing the

4   case through the lens of the <u>Read</u> factors, Baden has not shown that Molten acted in bad faith.  The

5   Court will not enhance the patent damages, particularly because Baden did not prove that Molten

6   purposely copied Baden's design, because Molten changed its design, and because the litigation

7   difficulties resulted from poor lawyering, not malicious intent.

8   **III.   Attorneys' Fees**

9       In a patent case, "[t]he court in exceptional cases may award reasonable attorney fees to the

10  prevailing party." 35 U.S.C. § 285.  The Federal Circuit has outlined a two-step inquiry that the court

11  must undertake to make such an award.  First, the court "must determine whether there is clear and

12  convincing evidence that the case is 'exceptional.'" <u>Intersprio USA, Inc. v. Figgie Intern., Inc.</u>, 18

13  F.3d 927, 933 (Fed. Cir. 1994).  Second, the court must determine whether "an award of attorney's

14  fees to the prevailing party is warranted." <u>Id.</u> "Exceptional" cases include cases where there is

15  "[i]nequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise

16  bad faith litigation; [or] a frivolous suit or willful infringement." <u>Epcon Gas Sys., Inc. v. Bauer</u>

17  <u>Compressors, Inc.</u>, 279 F.3d 1022, 1034 (Fed. Cir. 2002); <u>see also</u> <u>Serio-US Indus., Inc. v. Plastic</u>

18  <u>Recovery Techs. Corp.</u>, 459 F.3d 1311, 1321-22 (Fed. Cir. 2006).

19      The attorneys' fee inquiry in a Lanham Act case is very similar to the inquiry under the Patent

20  Act.  Pursuant to 15 U.S.C. § 1117(a), the court "in exceptional [trademark] cases may award

21  reasonable attorney fees to the prevailing party."  "A trademark case is exceptional where the district

22  court finds that the defendant acted maliciously, fraudulently, deliberately, or willfully." <u>Earthquake</u>

23  <u>Sound Corp. v. Bumper Indus.</u>, 352 F.3d 1210, 1216 (9th Cir. 2003).

24      Baden argues that the Court should award attorneys' fees because Molten willfully infringed

25  Baden's patent, intentionally falsely advertised its product as "innovative," and engaged in litigation

26  misconduct.  In addition to the other forms of alleged litigation misconduct discussed above, Baden

1  points to the fact that (1) Molten refused to acknowledge patent infringement, and (2) Molten offered

2  no proof of invalidity.

3       The Court concludes that attorneys' fees are not warranted under either cause of action.

4  First, attorneys' fees are not warranted on the patent claim.  Defendants did not engage in litigation

5  misconduct, nor did they act with bad faith.  Molten did not need to admit infringement from the start

6  of the lawsuit: it was only after the Court issued its claim construction order that infringement became

7  obvious.  Moreover, Molten had evidence regarding invalidity; had its attorneys disclosed its

8  witnesses, Molten may have prevailed on its invalidity defense.  Counsel's handling of the defense

9  was inept, but the Court cannot attribute any ill will to Defendants' litigation conduct.  Defendants'

10  counsel had a complete lack of understanding of the applicable local and federal procedural rules,

11  particularly the requirement of prompt and complete disclosure.  Thus, although defense counsel was

12  ineffective, this is not an "exceptional" patent case warranting attorneys' fees.

13       Likewise, in terms of intentional false advertising, Baden has not shown that this is an

14  "exceptional" Lanham Act case.  The jury found intentional false advertising.  But Baden did not

15  present any evidence suggesting that Molten knew its advertising of "dual cushion" basketballs as

16  "innovative" was false.  Molten also reasonably disputed the Lanham Act claim: Molten argued that

17  the term "innovative" was puffery,[2] and that Baden's claim was barred by the Supreme Court's

18  decision in <u>Dastar Corp. v. Twentieth Century Film Corp.</u>, 539 U.S. 23 (2003).  Molten did not act in

19  bad faith such that Baden deserves attorneys' fees.

20  **IV.    Pre-Judgment Interest**

21       In terms of the patent damages, prejudgment interest should be awarded pursuant to 35

22  U.S.C. § 284.  That section provides: "Upon finding for the claimant the court shall award the

23  claimant damages adequate to compensate for the infringement, but in no event less than a reasonable

24  royalty for the use made of the invention by the infringer, together with interest and costs as fixed by

25  _____

26       [2]    However, the Court never ruled on the puffery question because Molten only raised the
     issue in a reply brief to a motion for summary judgment and in its proposed jury instructions, both
     inappropriate contexts for raising a new issue of law.

1   the court." 35 U.S.C. § 284.  "[P]rejudgment interest should ordinarily by awarded where necessary

2   to afford the plaintiff full compensation for the infringement." General Motors Corp. v. Devex Corp.,

3   461 U.S. 648, 654 (1983).  But whether prejudgment interest is actually warranted, and the rate of

4   interest, is within the court's discretion.  See Kaufman Co. v. Lantech, Inc., 926 F.2d 1136, 1144

5   (Fed. Cir. 1991).  Prejudgment interest may only be applied to compensatory damages, and may not

6   be applied to enhanced damages. Underwater Devices, Inc. v. Morrison-Knudsen Co., 717 F.2d

7   1380, 1389 (Fed. Cir. 1983).  Courts have applied various interest rates, including the prime rate,

8   corporate bond rates, a consumer credit rate, the rate the patentee paid for borrowed funds, and the

9   rate the patentee earned on spare funds. See NTP Inc. v. Research in Motion, Ltd., 270 F. Supp. 2d

10  751, 763 (E.D. Va. 2003) (citing 7 Donald S. Chisum, Chisum on Patents § 20.03[4][a][v] (2002)).

11  Baden has not indicated which interest rate should apply here.

12      The Court awards prejudgment interest on the patent damages to be calculated using the

13  method articulated in 28 U.S.C. § 1961(a).  Such interest shall be calculated from February 13, 2006,

14  the day this suit was filed.  The Court does not award prejudgment interest on the Lanham Act

15  award.  The award of prejudgment interest in trademark cases is generally reserved for exceptional

16  cases. See Am. Honda Motor Co., Inc. v. Two Wheel Corp., 918 F.2d 1060, 1064 (2d Cir. 1990).

17  As discussed above, this is not an exceptional case.

18  **V.      Other Issues**

19          **A.      Definition of Willful Patent Infringement**

20      The Court instructed the jury on the elements of "willful [patent] infringement."  The Court

21  instructed that the jury must find by clear and convincing evidence that Molten had actual knowledge

22  of the '835 patent and that Molten had no reasonable basis for believing either (a) that it did not

23  infringe or (b) that the '835 patent was invalid.  Those final instructions were given on August 14,

24  2007.  On August 16, the jury rendered its verdict, finding that Molten had willfully infringed Baden's

25  '835 patent. (Dkt. No. 321.)  On August 20, 2007, the Federal Circuit overruled its previous

26  definition of willful infringement and held that "proof of willful infringement permitting enhanced

damages requires at least a showing of objective recklessness." <u>In re Seagate Tech., LLC</u>, MD No. 830, 2007 U.S. App. LEXIS 19768, at *22 (Aug. 20, 2007).  The court elaborated on the new definition:

> Accordingly, to establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.  The state of mind of the accused infringer is not relevant to this objective inquiry.  If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer.  We leave it to future cases to further develop the application of this standard.

<u>Id.</u> at *22-23 (internal citations omitted).  Molten argues that <u>In re Seagate</u> undermines the jury's finding of "willful" infringement.  Molten asks that the Court delay consideration of any judgment, enhanced damages, or attorneys' fees, pending resolution of the post-trial motions challenging the jury's willfulness finding.  However, such delay is unnecessary in light of the Court's decision to deny Baden's request for enhanced damages and attorneys' fees.  The request for a delay is DENIED.

## B.    Remedies-Specific Evidentiary Hearing

Although the Court has already conducted a jury trial, Molten requests a remedies-specific evidentiary hearing. (Dkt. No. 336.)  Molten cites a number of appellate decisions in which the court reversed a district court's permanent injunction order where no remedies-specific hearing had been held. <u>See</u> <u>United States v. Microsoft</u>, 253 F.3d 34, 101 (D.C. Cir. 2001) ("A hearing on the merits-- i.e., a trial on liability--does not substitute for a relief-specific evidentiary hearing unless the matter of relief was part of the trial on liability, or unless there are no disputed factual issues regarding the matter of relief."); <u>Moltan Co. v. Eagle-Picher Indus.</u>, 55 F.3d 1171, 1175 (6th Cir. 1995) ("An evidentiary hearing is ordinarily required prior to the issuance of a permanent injunction."); <u>United States v. Owens</u>, 54 F.3d 271, 276-77 (6th Cir. 1995); <u>Charlton v. Estate of Charlton</u>, 841 F.2d 988, 989 (9th Cir. 1988).  Molten concedes that the Court may <u>deny</u> any of Baden's requests for an injunction, enhanced damages, or attorneys' fees without a hearing.  Because the Court only enjoins

1   conduct that the jury specifically found to be infringing, no facts are in dispute, and no evidentiary

2   hearing is necessary.[3] See Microsoft, 253 F.3d at 101.

3       The Court also notes that Defendants never, prior to the current motions, requested a separate

4   evidentiary hearing regarding equitable remedies.  Defendants were well aware that Plaintiff was

5   pursuing injunctive relief and enhanced damages.  Not only did Baden request this relief in its

6   Amended Complaint, (see Dkt. No. 103, at 14-15) but it moved for a permanent injunction before

7   trial (Dkt. No. 170), and requested injunctive relief in its trial brief (Dkt. No. 276).  Indeed, when the

8   Court denied Baden's pre-trial request for injunctive relief, the Court made clear that Baden's request

9   was premature, and could not be decided until after trial. (See Dkt. No. 236, at 14-16.)   In addition,

10  during the process of drafting the jury instructions, the Court discussed with the parties the fact that

11  Baden sought instructions on willful infringement and intentional false advertising because it intended

12  to seek equitable remedies after trial.  At no point throughout this litigation — in their Joint Status

13  Report, at oral argument on the motion for permanent injunction, during the drafting of the jury

14  instructions, or at trial, did Defendants request that the Court conduct a separate evidentiary hearing

15  regarding equitable remedies.  Now unhappy with the jury's verdict and with their trial counsel,

16  Defendants seek an additional opportunity to argue their position.  The Court considers these issues

17  already tried, and an additional evidentiary hearing unnecessary.

18      **C.    Use of the Realtime Transcript**

19      In support of their arguments, both parties have cited to pages from the "Realtime" transcript,

20  which is an instantaneous display of the trial transcript as it is being typed by the court reporter. (See

21  Dkt. No. 323, Plf.'s Mot. at 3-4; Dkt. No. 335, Defs.' Opp. at 8.)  However, the Realtime transcript

22  is not the final transcript; it is a rough draft that has not been edited or proofed.  No official transcript

23  of the trial proceedings has been ordered or supplied to the Court.  Because the parties have only

24  referred to a rough draft of the transcript, and because they have not supplied either that draft or an

25

26          [3]      The Court also points out that the injunction it has entered is virtually identical to the
    proposed permanent injunction offered by Defendants. (See Dkt. No. 335-2.)

ORDER - 13

1    official transcript of the proceedings to the Court, the Court has relied on its own notes and

2    recollection of the proceedings for the purposes of this order.

3                                                **Conclusion**

4           Based on the evidence presented at trial, and in exercise of its equitable discretion, the Court

5    GRANTS IN PART and DENIES IN PART Baden's motion for entry of a final judgment and

6    permanent injunctive relief.  The Court enjoins Molten from continuing to sell or offer to sell its

7    infringing "dual cushion" basketballs, and also enjoins Molten from advertising to U.S. consumers its

8    "dual cushion" basketball as "innovative."  The Court declines to enhance damages or to award

9    attorneys' fees.  The Court awards prejudgment interest on the jury's patent damages award.  Finally,

10   the Court DENIES Defendants' request for a remedies-specific evidentiary hearing.

11          Baden must present to the Court, within five (5) days of this order, a proposed final judgment

12   drafted in light of this order.

13          The clerk is instructed to send copies of this order to all counsel of record.

14          Dated: September 25th, 2007.

15

16                                              Marsha J. Pechman
                                                United States District Judge

17

18

19

20

21

22

23

24

25

26

ORDER - 14