1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6
7
8
9
10
11
12
13

BADEN SPORTS, INC.

                              Plaintiff,

v.

KABUSHIKI KAISHA MOLTEN (DBA
MOLTEN CORPORATION) and MOLTEN
U.S.A., INC.,

                              Defendants.

No. C06-210MJP

ORDER DENYING MOLTEN'S
MOTION FOR JUDGMENT AS A
MATTER OF LAW AND MOTION
FOR NEW TRIAL

14   This matter comes before the Court on Defendants' motion for judgment as a matter of law

15   (Dkt. No. 359) and motion for a new trial (Dkt. No. 358).  Plaintiff opposes both motions. (Dkt. Nos.

16   372 & 373.)  Having considered the motions and responses, Defendants' replies (Dkt Nos. 375 &

17   374), all documents submitted in support thereof and the record herein, and having heard oral

18   argument on the motions, the Court DENIES both motions.

19                              **Background**

20   Defendants Kabushiki Kaisha Molten and Molten U.S.A. (hereinafter "Molten") and Plaintiff

21   Baden Sports are competitors in the sports ball business.  In the 1990's, Baden developed and

22   patented a new game-quality basketball that is "cushioned" or "padded."  (Third Amended Complaint

23   [hereinafter Compl.] ¶ 10.)   Believing that Molten had started selling "dual cushion technology"

24   basketballs in the United States that infringed on Baden's patent, Baden sued Molten for patent

25   infringement.  Baden also sued Molten for violations of the Lanham Act, 15 U.S.C. § 1125, alleging

26   that Molten falsely advertised its infringing basketball as an "innovative technology that is proprietary

ORDER - 1

1   to Molten" and imported its balls into the United States without marking the country of origin.

2   (Compl. ¶ 46). As the litigation progressed, Molten changed the design of its "dual cushion

3   technology" basketball that it sold in the United States.

4           This case was tried before a jury between August 6 and August 14, 2007. Before trial began,

5   the Court granted summary judgment in favor of Defendants on Plaintiff's country of origin claim and

6   granted summary judgment in favor of Plaintiff on Plaintiff's claim that Defendants' "old" basketballs

7   infringed its '835 patent. (Dkt. Nos. 233 & 236.) The Court also limited Baden's Lanham Act claim

8   by ruling that Baden could only bring such a claim on Molten's advertising that its basketballs were

9   "innovative" and not on Molten's advertising that its basketballs were "exclusive" or "proprietary."

10  (Dkt. No. 233.)

11          The Court made several important discovery rulings before and during trial that affected

12  Molten's ability to present its defense. Before trial, the Court granted Baden's motion to exclude all

13  Molten Corporation witnesses, including Hidesuki Kiriki, who had planned to testify regarding the

14  construction of the "new" Molten basketball and Molten's JP '253 patent, on which the "new" design

15  is based. (Dkt. No. 235.) The Court excluded Mr. Kiriki and all other Molten Corp. witnesses

16  because Molten inexcusably delayed disclosing its intention to call Mr. Kiriki until after discovery had

17  closed and because Molten's counsel had informed Baden that no Molten Corp. witnesses would

18  testify at trial. (Id.) The Court also excluded Craig Barker, who had planned to testify regarding the

19  obviousness of Baden's '835 patent, because Molten did not identify Mr. Barker as a witness until

20  three months after the close of discovery. (Dkt. No. 283; Tr. 698-702.) During trial, the Court

21  granted Baden's motion to exclude English translations of Molten's Japanese prior art patents

22  because Molten did not disclose, until after trial had already commenced, the translator of those

23  documents and because Molten did not offer a witness to lay the foundation for the accuracy of the

24  translations. (Tr. 985-88.) Molten therefore had no evidence to present to the jury on the issue of

25  invalidity and the Court directed a verdict in favor of Plaintiff on Defendants' claim that Plaintiff's

26  patent was invalid. (Tr. 993.) Molten's dilatoriness in identifying witnesses and preparing for trial

1   thus resulted in key witnesses and evidence being excluded, and a directed verdict on the issue of

2   invalidity in favor of Baden.

3          Several questions were presented to the jury: (1) whether Baden had proved that Molten had

4   falsely advertised its product as "innovative"; (2) whether any such false advertising was intentional;

5   (3) whether Baden had proved that Molten had continued to offer for sale in the United States its

6   infringing basketball; and (4) whether Molten's patent infringement was willful. (Dkt. No. 313.)  The

7   jury was also asked to decide what amount to award as damages for the Lanham Act violation and/or

8   a reasonable royalty for the Patent Act violation. (Id.)  On August 16, the jury rendered a verdict in

9   favor of Plaintiff on all claims, concluding that Molten had intentionally falsely advertised, continued

10  to offer for sale infringing basketballs, and willfully infringed Baden's '835 patent.  The jury awarded

11  Baden $38,031.00 as a reasonable royalty for patent infringement and $8,054,579.00 as damages for

12  Molten's intentional false advertising. (Dkt. No. 321.)

13         After trial, the Court granted in part Baden's motion for a final judgment and permanent

14  injunction.  The Court enjoined Molten from false advertising within the United States and false

15  advertising directed at United States consumers. (Dkt. No. 348.)  The Court granted Baden's motion

16  for prejudgment interest, but denied Baden's motion for enhanced patent damages and attorneys'

17  fees. (Id.)

18         After trial, Molten retained new counsel and terminated all but one of its trial attorneys.  With

19  its new counsel, Molten now moves for judgment as a matter of law and for a new trial.

20                                              **Discussion**

21  **I.      Motion for Judgment as a Matter of Law**

22         Molten moves for judgment as a matter of law ("JMOL") under Federal Rule 50(b).   The

23  parties dispute whether Molten properly preserved all of the issues it raises in its motion and whether

24  the jury's verdict is supported by substantial evidence.

25

26

**A.      Preservation of Issues for Federal Rule 50(b) Motion**

Federal Rule 50 provides in relevant part:

**(a)      Judgment as a Matter of Law**

(1)      In General.  If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

(A)      resolve the issue against the party; and

(B)      grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

(2)      Motion.  A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury.  The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

**(b)      Renewing the Motion After Trial; Alternative Motion for a New Trial.**  If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.  No later than 10 days after the entry of judgment — or if the motion addresses a jury issue not decided by a verdict, no later than 10 days after the jury was discharged — the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.  In ruling on the renewed motion, the court may:

(1)      allow judgment on the verdict, if the jury returned a verdict;

(2)      order a new trial; or

(3)      direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(a), (b).[1]  Rule 50 therefore prescribes a two-step process for preserving challenges to the sufficiency of the evidence supporting a verdict: first, a party must file a pre-verdict motion under Rule 50(a) (also known as a "directed verdict" motion); second, the party must file a post-verdict motion for judgment as a matter of law.  See Nitco Holding Corp. v. Boujikian, 491 F.3d 1086, 1089 (9th Cir. 2007).  "Rule 50(b) restricts the grounds that may be asserted in post-verdict motions to those asserted in pre-verdict motions."  See 9 James Wn. Moore, Moore's Federal Practice

---

[1]      The Court refers to the Federal Rules of Civil Procedure as amended in 2007.  The 2007 amendments to the language of Rule 50, effective Dec. 1, 2007, are intended to by stylistic only. Fed. R. Civ. P. 50 advisory committee's note 2007 Amendments.

1  – Civil § 50.05[5][b][i] (2007).  Thus, a Rule 50(a) motion is a prerequisite to a Rule 50(b) motion;

2  to move for judgment as a matter of law on a particular issue, the movant must have previously raised

3  that specific issue in the pre-verdict motion. Id.; see also Gilchrist v. Jim Slemons Imports, Inc., 803

4  F.2d 1488, 1493 (9th Cir. 1986).

5       The chronology of the parties' Rule 50(a) motions is as follows:

6       (1)     After Plaintiff's opening statement, Molten moved "under Rule 50 based on the

7  opening statement." (Tr. 192.)  Molten argued that Baden's false advertising claim — that Molten

8  falsely advertised that its basketball was "innovative" — was really a "reverse passing off" claim

9  relating to the inventorship of Molten's "dual cushion technology," a claim barred under the Court's

10  summary judgment order and the Supreme Court's decision in Dastar Corp. v. Twentieth Century

11  Fox Film Corp., 539 U.S. 23 (2003). (Id.)  The Court denied the motion, stating that it is "rare" that

12  this kind of motion should be granted, and that as long as the facts presented in the opening statement

13  could support Plaintiff's claim, the motion should be denied. (Tr. 198.)

14       (2)     After the parties presented all their evidence, the Court invited motions for directed

15  verdict. (Tr. 990.)  Baden moved on two issues — whether Baden's patent was invalid and whether

16  Molten continued to offer to sell infringing dual cushion technology basketballs even after it changed

17  its basketball design.

18       (3)     Before the Court could rule on Baden's motion, Molten made the following motion:

19       We would like to move for directed verdict on that same issue as well [sic] on different
         grounds, which is lack of proof or any evidence of any damage resulting from the alleged
20       offers to sell that came after the sales of the actual product were halted.

21  (Tr. 993.)  By "same issue," Molten meant the same issue that Baden had just raised, i.e. whether

22  Baden had proved that Molten violated the Patent Act by continuing to "offer to sell" infringing

23  basketballs.  The Court granted Baden's motion on the invalidity claim, denied Baden's motion on the

24  offer to sell issue, and then invited Molten to make its motion again.  Molten's counsel responded:

25       In light of Your Honor's ruling on the second part, the offer to sell part of their motion,
         I will not pursue the other motion.
26

1   (Tr. 995.)  Thus, Molten withdrew its motion on the lack of proof of damage resulting from the

2   alleged offers to sell.  Molten made no other directed verdict motions.

3          Based on its review of the transcript and applicable case law, the Court concludes that Molten

4   preserved two issues for a Rule 50(b) motion: (1) whether Baden's false advertising claim under the

5   Lanham Act can proceed under the Supreme Court's decision in Dastar; and (2) whether Baden

6   offered sufficient evidence to prove that Molten continued to offer its infringing basketballs for sale

7   even after it changed to a non-infringing design.  Baden argues that Molten waived the first issue by

8   raising it at the close of opening arguments rather than waiting until Baden presented its evidence.

9   (Baden does not challenge that Molten preserved the second issue.)  In McSherry v. City of Long

10  Beach, 423 F.3d 1015 (9th Cir. 2005), the Ninth Circuit held that a district court erred when it

11  granted a Rule 50 motion before trial started.  But in a footnote, the court explicitly stated that its

12  holding does not encompass a judgment as a matter of law granted after opening statements.  Id. at

13  1021 n.3.  And the opinion indicates that a district court could treat a motion made at the close of

14  opening statements as a proper Rule 50(a) motion because "the allegations of the pleadings, the

15  evidence before the court, and the promises of evidence recited in [the] opening statement can be

16  insufficient as a matter of law to warrant any relief. . . ." Id. (internal quotation marks omitted); see

17  also 9 Moore's Federal Practice – Civil § 50.20[2][b] ("Judgment as a matter of law may be granting

18  following an opponent's opening statement if that opening statement embraces all operative facts

19  expected to be proven at trial and those facts are insufficient to sustain a claim for relief under any

20  legal theory.").  Acknowledging a Rule 50(a) motion made at the close of opening statements makes

21  sense in light of the purpose of the two-tiered Rule 50 motion process: the earlier motion puts the

22  non-movant on notice that the movant believes the non-movant's evidence is insufficient to support

23  its claim.  See McSherry, 423 F.3d at 1020 (noting that one of the major purposes of Rule 50(a) is to

24  give the non-moving party notice of and an opportunity to cure any deficiency in that party's proof);

25  see also Summers v. Delta Air Lines, Inc., 508 F.3d 923 at *8-9 (9th Cir. Nov. 27, 2007).  The Court

26  concludes that Molten's motion, made at the close of opening statements, was sufficient to put Baden

1    on notice of deficiencies in its proof and properly preserved the <u>Dastar</u> issue for consideration in a

2    Rule 50(b) motion.

3            Molten, however, seeks to challenge more than just the false advertising and offer to sell

4    issues.  Molten seeks judgment as a matter of law on additional issues, arguing as follows:

5        1)   Molten's advertisement of dual cushion technology basketballs as "innovative"
             constitutes non-actionable puffery as a matter of law;

6

7        2)   The evidence does not support a finding that Molten's description of dual cushion
             technology basketballs as innovative actually deceived consumers, was material or
             caused Baden injury;

8

9        3)   The jury's damages award, in excess of $8 million, is not supported by the evidence
             and is erroneous as a matter of law; and

10       4)   The jury's verdict that Molten's infringement was "willful" is not supported by the
             evidence and is erroneous as a matter of law.

11

12           These issues are not properly considered under Rule 50(b) because Molten did not preserve

them in any Rule 50(a) motion.  <u>See</u> <u>Gilchrist</u>, 803 F.2d at 1493.  Molten argues that even if it waived

13

these issues under Rule 50(a), the Court may review the sufficiency of the evidence and grant

14

judgment as a matter of law where there is plain error apparent on the face of the record such that the

15

failure to review the sufficiency of the evidence would result in a manifest miscarriage of justice.  But

16

Molten has failed to cite any legal authority suggesting that a <u>district court</u> may conduct this "plain

17

error" review.  Molten cites to a 1987 Ninth Circuit case in which the Ninth Circuit stated that <u>it</u>

18

could review the sufficiency of evidence despite a failure to move for a directed verdict at the close of

19

evidence where there is plain error apparent on the face of the record.  <u>Herrington v. County of</u>

20

<u>Sonoma</u>, 834 F.2d 1488, 1500 n.11 (9th Cir. 1987).  <u>Herrington</u> was recently overruled in <u>Nitco</u>, 491

21

F.3d at 1090.  In <u>Nitco</u>, the Ninth Circuit ruled that a recent Supreme Court opinion — <u>Unitherm</u>

22

<u>Food Systems, Inc. v. Swift-Eckrich, Inc.</u>, 546 U.S. 394 (2006) — precludes plain error appellate

23

review when a party fails to file a proper Rule 50(b) motion.  The Court overruled its prior decisions

24

that had suggested otherwise: "To the extent that our prior decisions permitted a discretionary plain

25

error review, we must overrule those decisions as in conflict with controlling Supreme Court

26

authority." <u>Nitco</u>, 491 F.3d at 1090.  Thus, <u>Nitco</u> overrules <u>Herrington</u> and makes clear that appellate

1   courts may not conduct plain error review where a party procedurally defaults a civil appeal by not

2   following the Rule 50 process.  Molten has not cited and the Court is not aware of any authority for

3   the proposition that, despite Nitco and Unitherm, the district court may conduct plain error review

4   where a party has failed to preserve an issue for its Rule 50(b) motion.  The Court declines to

5   conduct any plain error review of those issues that Molten failed to preserve for a Rule 50(b) motion

6   through a Rule 50(a) motion.[2]

7        Molten also suggests that the Court may review its puffery argument now because, even

8   though Molten did not explicitly raise the issue during trial, "the Court may consider Molten's

9   objection as such." (Def's Reply on JMOL Mot. at 3.)   The Ninth Circuit has said that where "an

10  ambiguous or inartful request or motion is made at the close of evidence which sufficiently

11  approximates a motion for a directed verdict," the Court may construe that request as a Rule 50(a)

12  motion. See Herrington, 834 F.2d at 1500.  But Molten does not even suggest which "inartful"

13  request should be construed as a directed verdict motion regarding puffery.  And the transcript

14  reveals that no such Rule 50(a) motion was ever made. See infra (discussion regarding motions made

15  on record).  Molten did not preserve the puffery issue for its Rule 50(b) motion.

16       The Court notes that Molten missed earlier opportunities during this litigation to raise the

17  puffery issue.  Molten first argued that its use of the word "innovative" was mere puffery (and

18  therefore not actionable under the Lanham Act) in its reply brief to its motion to dismiss, filed in

19  October 2006. (See Dkt. No. 57.)  The Court rejected the argument specifically because Molten had

20  raised it for the first time in a reply brief. (See Dkt. No. 115, Order at 8.)  Because Baden had not had

21  a chance to respond, the Court stated that it would "not consider at this stage whether Molten's

22  assertions that it has developed an 'innovative' and 'proprietary' design is mere puffery." (Id.)

23  Molten subsequently filed several other dispositive motions, but never raised the puffery issue in those

24  motions.  The only other time Molten raised the issue of puffery was in connection with the proposed

25

26       [2]    Even if the Court were to conduct such a review, the Court would conclude that there is
    no plain error on the face of the record warranting judgment as a matter of law.

preliminary jury instructions.  But as Molten admits in it briefing, whether a statement that Molten's "dual cushion technology' basketballs are "innovative" is mere puffery "is a question that can and should be determined by the Court as a matter of law." (Defs' Mot. for JMOL at 3.)  The Court rejected Molten's jury instruction on puffery for precisely that reason — because the question is not a fact question to be decided by the jury.  Because Molten failed to properly raise this legal issue, it is now waived.

In conclusion, the Court concludes that Molten preserved only two issues for consideration in its Rule 50(b) motion: (1) whether Baden's false advertising claim under the Lanham Act can proceed under the Supreme Court's decision in Dastar; and (2) whether Baden offered sufficient evidence to prove that Molten continued to offer its infringing basketballs for sale even after it changed to a non-infringing design.

**B.      Substantive Standard for Federal Rule 50(b) Motion**

The parties do not dispute the standard for evaluating a motion for judgment as a matter of law: a motion for judgment as a matter of law may be granted only if there is an absence of substantial evidence to support the verdict. Wallace v. City of San Diego, 479 F.3d 616, 624 (9th Cir. 2007). "Substantial evidence is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence." Id. (quoting Johnson v. Paradise Valley Unified Sch. Dist., 251 F.3d 1222, 1227 (9th Cir. 2001)). "In making this determination, the court must not weigh the evidence, but should simply ask whether the plaintiff has presented sufficient evidence to support the jury's conclusion." Id.  Although the court must review the entire evidentiary record, it should disregard all evidence favorable to the moving party that the jury is not required to believe. Id. The court must view all the evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of that party. Id.  "Judgment as a matter of law may be granted only where, so viewed, the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." Id.

1          **C.     Dastar Issue**

2          Molten argues that Baden's false advertising claim as presented to the jury should be vacated

3 because the claim is barred by the Supreme Court's decision in Dastar Corp. v. Twentieth Century

4 Fox Film Corp., 539 U.S. 23 (2003).  Dastar held that a false advertising claim under § 43 of the

5 Lanham Act cannot be based on inventorship or ownership of a product. Dastar, 539 U.S. at 37.   In

6 its order granting in part and denying in part Molten's motion for summary judgment on Baden's

7 Lanham Act claims, the Court concluded that Dastar does not bar Plaintiff's false advertising claim

8 based on Molten's advertising that its product or technology is "innovative" because "whether

9 something is 'innovative' does not turn on who owns or offers a product." (Dkt. No. 233, Order at

10 8.)  "[A]ny advertising indicating that Molten's 'Dual Cushion Technology' is 'innovative' or new

11 relates, not to the inventor of Molten's basketball technology, but to the 'nature, characteristics, [or]

12 qualities' of the basketballs themselves." (Id.)  Molten argues that despite the Court's ruling, Baden

13 presented evidence at trial that confirms that its Lanham Act claim is merely an inventorship claim,

14 i.e., a claim that Molten falsely advertised its dual cushion technology as its own, rather than Baden's,

15 invention.

16         The Court instructed the jury regarding Baden's Lanham Act claim in a series of instructions.

17 In its "Unfair Competition" instruction, the Court explained that "Baden Sports claims Molten Corp.

18 and Molten USA advertised their 'dual cushion' basketballs as a Molten innovation and they were

19 not." (Dkt. No. 312, Final Jury Instruction No. 15.)  The Court also instructed that to prevail on their

20 false advertising claim, Baden must prove that "in advertisements, defendants made false statements

21 of fact about their own product. . . ." (Id., Final Jury Instruction No. 16.)

22         Several witnesses testified that Molten falsely advertised its "dual cushion technology" as a

23 Molten innovation.  Although some of that testimony indicates that the witnesses believed that

24 Molten's advertising was false because Baden actually created the patented design, not Molten, (see

25 Schindler testimony, Tr. 228:24) other testimony makes clear that the witnesses believed the

26 advertising to be false because Molten's product was not "new."  (See Schindler testimony, Tr.

229:4-7; Holm testimony, Tr. 317:15-16; Yalch testimony, Tr. 349: 17-22, 470:1-6.)  The fact that witnesses used Baden's prior design as evidence to show that Molten's product was not innovative or new does not mean that Baden was actually basing its false advertising claim on an allegation that "Molten didn't make it, we did."  The Court concludes that Baden's false advertising claim, as presented to the jury, does not run afoul of Dastar.

**D.     Offer for Sale**

Molten also argues that Baden did not offer sufficient evidence to prove that Molten continued to offer its infringing basketballs for sale even after it changed to a non-infringing design. Although Molten contended that it changed its basketball design (in the United States) in June 2006 and stopped selling basketballs in the United States with the infringing "dual cushion technology" in January 2007, Baden alleged that Molten continued to offer these infringing balls for sale in the United States after January 2007. (Dkt. No. 312, Final Jury Instructions No. 24.)  The Court instructed the jury that in order to find that either defendant infringed Baden's patent by making an offer to sell a ball with "dual cushion technology," the jury must find that Baden proved:

(1)     that the defendant made an offer which showed a willingness to enter into a bargain, so that the buyer would understand that his agreement to the bargain is invited and will conclude it;

(2)     that the offer contemplates a sale to be concluded in the United States.

(Id.)  Baden presented evidence showing (and Molten admits in its briefing) that Molten USA's website contained advertisements for "dual cushion technology" basketballs after January 2007. (Tr. 623:22–624:14, 669-72; Defs' Mot. for JMOL at 10.)  Consumers could order those basketballs directly from the Molten USA website.[3]  This evidence is sufficient to support the jury's conclusion that Molten continued to offer for sale infringing "dual cushion technology" basketballs after January 2007.[4]

---

[3]     Molten USA CEO Kiyoaki Nishihara testified that basketballs were actually sold through the Molten USA website. (Tr. 624:13-14.)

[4]     Because the Court concludes that the evidence of offers to sell made through the Molten USA website is sufficient to support the jury's verdict on this issue, the Court need not consider the

1    **II.    Motion for New Trial**

2          Molten moves for a new trial under Federal Rule 59(a).  Federal Rule 59(a) provides:

3          The court may, on motion, grant a new trial on all or some of the issues — and to any
       party — as follows:

4
              (A)    after a jury trial, for any reason for which a new trial has heretofore been
5                    granted in an action at law in federal court . . . .

6    Fed. R. Civ. P. 59(a).  "Since specific grounds for a motion to amend or alter are not listed in the

7    rule, the district court enjoys considerable discretion in granting or denying the motion." Jorgensen v.

8    Cassiday, 320 F.3d 906, 918 (9th Cir. 2003).  A motion for a new trial will be granted where the jury

9    instructions are erroneous or inadequate, the court made incorrect and prejudicial evidentiary rulings,

10   the verdict is against the great weight of the evidence, or the damages are excessive.  11 Wright,

11   Miller, Kane, Federal Practice & Procedure § 2805 (2d ed. 1995).  Baden incorrectly argues that

12   Molten cannot raise any "sufficiency of the evidence" issues that it did not preserve through a Rule

13   50(a) motion.  The Ninth Circuit recently stated that "a motion for a new trial does not have to be

14   preceded by a Rule 50(a) motion prior to submission of the case to the jury." Freund v. Nycomed

15   Amersham, 347 F.3d 752, 765 (9th Cir. 2003) (holding that motion for new trial on grounds of

16   insufficiency of evidence of malice did not need to be preceded by a Rule 50(a)-type motion at the

17   close of the evidence); see also 9B Wright & Miller, Federal Practice & Procedure § 2531 (3d ed.

18   2008) ("The failure to seek a judgment as a matter of law at the close of all the evidence does not

19   procedurally bar a motion for a new trial, but it does bar a renewed motion for judgment as a matter

20   of law.").[5]  Thus, Molten has not waived any of the arguments presented in its Rule 59 motion by not

21   raising them in a Rule 50(a) motion.

22         Molten makes the following arguments as grounds for a new trial:

23   _____

24   parties' dispute regarding whether advertising on Molten Corp.'s website constituted an offer to sell or
     whether Molten induced third parties to make such offers.

25         [5]    The Court acknowledges that some of the Ninth Circuit's case law suggests that a motion
     for new trial challenging the sufficiency of the evidence does need to be preceded by a Rule 50(a) motion.
26   See e.g., Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020 (9th Cir. 2003).  The Court is bound to
     follow Freund because it is the most recent and most directly applicable holding on the subject.

1  1)  The jury's verdict on Baden's false advertising claim is contrary to the clear weight of the
2      evidence, and was a result of legal error as the jury was not properly instructed on all
       necessary legal issues;

3  2)  The jury's damage award for the Lanham Act is contrary to the clear weight of the evidence,
       resulted from legal error, and is grossly excessive;

4
5  3)  The jury's verdict that Molten Corp. and Molten U.S.A. continued to offer for sale infringing
       basketballs in the United States is contrary to the clear weight of the evidence;

6  4)  The jury's verdict that Molten's infringement of the '835 patent was willful is contrary to the
       clear weight of the evidence, and was the result of legal error in light of <u>In Re Seagate</u>;

7
8  5)  The jury's damages award for the Patent Act claim is excessive due to the absence of marking
       and is contrary to the clear weight of the evidence.

9      Molten seeks a new trial on all of these issues, or alternatively, remittitur on the damages

10 awards.

11     **A.      Lanham Act claim**

12     Molten argues that the jury's verdict and damages award on Baden's Lanham Act claim is

13 contrary to the clear weight of the evidence, based on errors of law, and excessive.

14          **1.      The Court's Lanham Act Jury Instructions Were Appropriate**

15     The Court instructed the jury that to prevail on its false advertising cause of action, Plaintiff

16 needed to prove each of the following elements:

17     (1)  in advertisements, defendants made false statements of fact about their own product;

18     (2)  those advertisements actually deceived or have the tendency to deceive a substantial
            segment of their audience;

19
20     (3)  such deception is material, in that it is likely to influence the purchasing decision;

21     (4)  defendants caused the falsely advertised goods to enter United States interstate
            commerce; and

22     (5)  plaintiff has been or is likely to be injured as the result of the foregoing either by direct
            diversion of sales from itself to defendants or by lessening of the goodwill which its
23          products enjoy with the buying public.

24 (Dkt. No. 312, Final Jury Instruction No. 16.)

25     First, Molten argues that the Court's false advertising instruction was erroneous because it

26 omitted an instruction that puffery cannot support a Lanham Act violation. This issue has not been

ORDER - 13

1    preserved.  Molten objected to the Court's decision not to give a puffery instruction when it took its

2    exceptions to the <u>preliminary</u> set of jury instructions. (Tr. 24:10-18.)  But as the Court instructed the

3    jury, it is the <u>final</u> set of jury instructions that controls. (Dkt. No. 312, Final Jury Instructions No. 1.)

4    Molten did not object to the omission of a puffery instruction in the final set of instructions. (Tr.

5    1002-1005.)  Indeed, Molten itself recognized that it needed to make any such objection during the

6    final instruction process — Molten's counsel stated, after taking exception to the omission of a

7    puffery instruction in the preliminary set: "We think that this is probably a matter, though, that we

8    should reserve for the final instructions." (Tr. 24:16-18.)  By not taking exception to the final set of

9    instructions on this issue, Molten waived the issue.  And even if Molten had properly preserved the

10   issue for consideration on a motion for new trial, the Court did not err by not giving the puffery

11   instruction Molten had proposed.  That instruction asked the jury to decide whether Defendants' use

12   of the word "innovative" was mere puffery. (Dkt No. 284, Defs' Proposed Jury Instruction No. 42.)

13   As explained above, whether a statement is puffery is a question of law, not a fact question for the

14   jury.

15         Second, Molten argues that the Court erred by not giving an instruction that explained that

16   evidence of patent infringement is not evidence of false advertising.  But the jury instructions made

17   clear that the patent and false advertising claims were separate and distinct issues.  The Court

18   instructed the jury regarding this issue as follows:

19         You are instructed that in this case, Baden's claims for patent infringement and for unfair
         competition are separate and independent.  This means that the issue of whether Molten
20       infringed Baden's patent is a separate and different issue than the issue of whether it
         falsely advertised its "dual cushion" basketballs as innovative.
21

22   (Dkt. No. 312, Final Jury Inst. No. 20.)  Moreover, as the Court explained in an exchange with

23   counsel over this issue, both the verdict form and the instruction on the elements of the false

24   advertising claim also reinforced that whether Molten falsely advertised is a separate and distinct issue

25   from whether it infringed Baden's patent.  The Court did not err by not giving a redundant instruction

26   on this issue.

1

**2.     The Jury's Verdict is Not Contrary to the Clear Weight of the Evidence**

2      Molten argues that Baden did not prove that 1) Molten's advertising deceived consumers, 2)

3   Molten's advertising influenced consumer purchases, or 3) Molten's advertising caused injury.[6]

4      In terms of the deception element, Baden needed to prove that Defendants' false advertising

5   actually deceived or has the tendency to deceive a substantial segment of their audience. Rice v. Fox

6   Broad. Co., 330 F.3d 1170, 1180 (9th Cir. 2003).  Baden CEO Michael Schindler testified that

7   Molten's advertising that dual-cushion technology is a Molten innovation would "absolutely" deceive

8   a substantial part of Baden's consumers. (Tr. 233-34.)  Molten points to no testimony contradicting

9   Mr. Schindler's testimony.

10      Baden also proved that this deception was material, in that it was likely to influence

11   consumers' purchasing decisions. See Rice, 330 F.3d at 1180.  Richard Yalch, professor of marketing

12   at the University of Washington School of Business, testified that Molten's description of its "dual

13   cushion technology" as an innovative new feature providing various benefits would be important to

14   consumers choosing among basketballs and would likely influence consumers' purchasing decisions.

15   (Tr. 365-67.)  The Court overruled Molten's objections that this testimony was speculative. (Tr. 366-

16   67.)  Mr. Schindler also testified that, based on his assessment of the influence of Baden's own

17   advertising, he believed that Molten's advertising that "dual cushion technology" is a Molten

18   innovation would influence Baden's customers to purchase Molten basketballs. (Tr. 234:9-17.)

19   Molten argues that this testimony was speculative and that the record is devoid of direct evidence of

20   consumer deception, but Molten has pointed to no evidence or testimony in the record that

21   contradicts the testimony of these two witnesses.  The clear weight of the evidence in the record

22   favors Baden on the issue of materiality.

23      Finally, Baden offered evidence showing that Baden "has been or is likely to be injured as the

24   result of the foregoing either by direct diversion of sales from itself to defendant, or by lessening of

25   _____

26      [6]     The Court notes that Molten did not take exception to the Court's final instruction
regarding the elements of a false advertising claim. (See Tr. 1002-05.)  To the extent that Molten's
current argument involves rehashing the elements of a false advertising claim, its argument is waived.

1   the goodwill which its products enjoy with the buying public." See Rice, 330 F.3d at 1180; see also

2   Southland Sod Farms, 108 F.3d 1134, 1146 (9th Cir. 1997) (calling into question statement in earlier

3   Ninth Circuit opinion that actual evidence of injury resulting from deception was necessary and

4   holding that showing of actual consumer confusion was unnecessary because defendant's intentionally

5   false advertising entitled plaintiff to a presumption of causation).  Mr. Schindler and Baden senior

6   sales manager Matthew Holm testified that Molten's false advertising caused Baden's goodwill to be

7   damaged. (Tr. 235-36, 316-17.)  Although Molten argues that no specific or quantifiable examples of

8   harm or consumer confusion in the marketplace was provided for the jury to consider, such evidence

9   is not necessary, and Molten has pointed to no evidence or testimony in the record contradicting

10  Messrs. Schindler and Holm's testimony.

11         Thus, the clear weight of the evidence — indeed, the only evidence pointed to by the parties

12  — supports the jury's verdict on the false advertising claim.

13                    **3.    Damages Award**

14         Molten argues that the jury's $8 million damages award is grossly excessive and against the

15  clear weight of the evidence.  The Court instructed the jury that if Plaintiff proved the elements of its

16  false advertising claim, including that such advertising was intentional, Plaintiff was entitled to the

17  profits Molten earned as a result of the false advertising. (Dkt. No. 312, Final Jury Inst. No. 17.)  The

18  Court also instructed the jury that it was Defendants' burden to prove what portion of its profits were

19  attributable to factors other than the use of false advertising. (Id.)  Professor Yalch testified that

20  Molten's profits from the false advertising could be measured by the amount Molten paid for its

21  recent sponsorship agreements with FIBA and USA Basketball. (Tr. 371-72.)  Pursuant to these

22  sponsorship agreements, FIBA advertised and promoted Molten's "innovative" "dual-cushion

23  technology." (See Tr. 359-62, 368.)  Professor Yalch also testified that Molten's sales in the United

24  States were flat until 2004, but then took off after Molten changed the exterior design of the ball and

25  FIBA began promoting the ball. (Tr. 470.)  Professor Yalch testified that the amount Molten paid for

26  these agreements was a good estimate of the value of the agreements and therefore the value of the

advertising provided by the agreements. (Tr. 368-72.)  Professor Yalch testified that Molten paid $3.5 million for one FIBA sponsorship agreement, $18 million for another, and $100,000 for the USA Basketball agreement. (Tr. 371.)  Scott Hampton, a certified public accountant whose area of expertise is in valuation of intellectual property, calculated the net present value of the FIBA agreements to be $2,114,091 (for the December 2002 agreement) and $5,940,488 (for the December 2006 agreement). (Tr. 503.)  The sum of those two figures is the amount awarded by the jury for Lanham Act damages — $8,054,579.  Mr. Hampton also calculated Molten's profits on sales of basketballs in the United States from 2002 through January 1, 2007, to be $65,990. (Id.)

Molten presents several arguments regarding why the $8 million figure does not accurately reflect damages sustained by Baden as a result of Molten's intentional false advertising.  But Molten was able to make these argument to the jury, and to present evidence showing that Baden's damages were, in fact, much less.  The Ninth Circuit has stated that the amount a defendant spends on advertising may provide a good estimate of the financial benefit it obtains from that advertising. U-Haul Int'l, Inc. v. Jartran, Inc., 793 F.2d 1034, 1042 (9th Cir. 1986).  Molten has pointed to no evidence in the record contradicting Professor Yalch's testimony or proving that the damages amount should actually be much less.  The Court acknowledges that Krista Holt, Defendants' damages expert, testified that she believed Professor Yalch's calculation of Lanham Act damages to be inaccurate. (Tr. 881-84, 886.)  She also testified that because the FIBA agreements cover advertising and sponsorship for hundreds of countries, only a small percentage of the $8 million paid to FIBA could approximate United States profits. (Tr. 888-89.)  Ms. Holt estimated false advertising damages to be around $37,000. (Tr. 902-03.)  But Ms. Holt's testimony alone does override or undermine the testimony of Professor Yalch and Scott Hampton.  The jury's verdict on Lanham Act damages is not against the clear weight of the evidence.

### B.    Patent Claim

Molten argues that the Court should grant a new trial on Baden's Patent Act claim because (1) the jury's verdict that Molten continued to offer to sell "dual cushion technology" basketballs in

1    the United States is against the clear weight of the evidence, (2) the jury's verdict that Molten's

2    infringement was "willful" is against the weight of the evidence and based on an erroneous statement

3    of the law, (3) and the jury's damages award is excessive and against the clear weight of the evidence.

4                    **1.    Molten Continued to Offer for Sale Infringing Basketballs**

5            For the same reasons stated above in respect to Molten's motion for judgment as a matter of

6    law, the Court will not grant a new trial on the issue of whether Molten continued to offer for sale

7    infringing basketballs.  Baden's evidence showing that Molten USA's website contained

8    advertisements for "dual cushion technology" basketballs after January 2007 and that consumers

9    could order those basketballs directly from the Molten USA website is sufficient to support the jury's

10   conclusion that Molten continued to offer for sale infringing "dual cushion technology" basketballs

11   after January 2007.

12                   **2.    Willfulness**

13           Molten argues that the jury's finding of willful infringement is against the clear weight of the

14   evidence and based on an error of law.[7]  This issue is moot.  "Willfulness" is a factor that the Court

15   considers in determining whether enhanced damages and attorneys' fees are warranted.  The Court

16   has already decided <u>not</u> to award Baden enhanced damages or attorneys' fees. (Dkt. No. 348.)

17   Because the jury's willfulness finding has no effect on this litigation, the issue is moot and the motion

18   for a new trial on the issue of willfulness is denied.

19                   **3.    Damages**

20           The jury awarded $38,031 in patent damages.  The jury appears to have calculated that award

21   by multiplying a 15% royalty rate by a royalty base of $80,491, representing sales of the "old" dual

22   cushion technology basketball in the United States from 2002 through 2007, and $173,052,

23   representing sales of the "new" basketballs in the United States from August 2006 through January

24

25           [7]    On August 20, 2007, four days after the jury rendered its verdict and found that Molten
     had willfully infringed Baden's patent, the Federal Circuit overruled its previous definition of willful
26   infringement and held that "proof of willful infringement permitting enhanced damages requires at least
     a showing of objective recklessness." <u>In re Seagate Tech., LLC</u>, 497 F.3d 1360, 1371 (Fed. Cir. 2007).

1   2007. (See Tr. 1036-37.)  Molten argues that the jury's damages award is improper because its

2   calculation included sales of "dual cushion technology" basketballs made prior to the date on which

3   Baden is legally entitled to collect damages and included sales of non-infringing basketballs.

4       The Court will not disturb the jury's inclusion of the sales of "new" non-infringing balls from

5   August 2006 through January 2007 because those balls were sold during the time Molten was still

6   offering for sale its infringing ball even though it was delivering a non-infringing ball.

7       Molten argues that the jury's patent damages award improperly includes sales made prior to

8   the date on which Baden is legally entitled to collect damages. Patent Act damages are proper only

9   after a defendant had actual or constructive notice of the patent. See 35 U.S.C. § 287(a) (1994);

10  Maxwell v. J. Baker, Inc., 86 F.3d 1098, 1111 (Fed. Cir. 1996).  In its instructions to the jury on

11  patent damages, the Court did not instruct the jury that Baden is not entitled to damages pertaining to

12  sales before it either began marking its products or notified Molten of the infringement. (See Dkt. No.

13  312, Final Jury Inst. Nos. 27-28; Tr. 1005.)  But the Court did not instruct the jury on this notice

14  requirement, because Molten failed to timely raise the issue with the Court.  On August 9, the Court

15  instructed the parties that they were to confer regarding final jury instructions and file their proposed

16  final instructions no later than 8:00 a.m. on Monday, August 13, 2007. (Tr. 707.)  On August 13, at

17  7:43 a.m., Molten filed its proposed amendments to the preliminary instructions. (Dkt. No. 304.)

18  These proposed amendments did not include an instruction regarding the need for actual or

19  constructive notice of infringement. (Id.)  However, at 4:43 p.m. on August 13, Molten filed

20  supplemental proposed instructions that included a proposed instruction that stated that any royalties

21  awarded commence on the date Molten was notified of its infringement. (Dkt. No. 306.)  On August

22  14, the Court and counsel discussed the final set of jury instructions and the Court decided not to

23  include Defendants' late-proposed notice instruction. (See Tr. 1002-05.)  Molten took exception to

24  the Court's refusal to give this instruction. (Tr. 1005.)

25      The Court will not alter the jury's damages award based on an issue that Molten should have

26  raised earlier.  The Court instructed Molten to file its proposed final instructions by a certain time to

ORDER - 19

give opposing counsel time to prepare a response and to give the Court time to consider, research, and rule upon the proposed instructions.  Molten failed to timely present its proposed final instructions.  Because Molten waived this issue by not raising it in a timely fashion with the Court, the Court will not reduce the jury's patent damages award.

**C.      Evidence of Invalidity**

Finally, Molten takes issue with two of the Court's evidentiary rulings — the Court's exclusion of the Japanese prior art references and exclusion of Molten's witness Craig Barker, who intended to testify regarding the obviousness of Baden's patent.  Molten has offered no legal authority for its conclusory assertion that the Court's exclusion of this evidence and testimony constitutes legal error.  For the reasons explained above — particularly, because Molten inexcusably delayed identifying its witnesses and translator until the eve of trial (see Dkt. No. 283 & Tr. 698-702, 985-88) — the Court finds no error in these evidentiary rulings.  A new trial on these issues is not warranted.

//
//
//
//
//
//
//
//
//
//
//
//
//

**Conclusion**

After a seven-day trial, the jury returned its verdict in favor of Plaintiff, awarding Plaintiff over $8 million in Lanham Act and Patent Act damages. Unhappy with the outcome of the trial, and with new counsel at the helm, Defendants now want a "do over." But the outcome of the trial was, in large part, dictated by Molten's untimely identification of witnesses and evidence, late and chaotic presentation of jury instructions, and failure to properly present the legal issues. The Court-imposed deadlines provide a structure for efficient and fair presentation of the issues leading up towards trial; had the Court not ruled the way it did, Molten's failure to abide by these deadlines would have prejudiced Baden's ability to try its claims. The Court will not grant Molten's request for another chance to defend against Baden's claims. The Court DENIES the motions for new trial and judgment as a matter of law.

The clerk is directed to send a copy of this order to all counsel of record.

Dated: January 28th, 2008.

Marsha J. Pechman
United States District Judge

ORDER - 21