UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BADEN SPORTS, INC.,

          Plaintiff,

v.

KABUSHIKI KAISHA MOLTEN (DBA MOLTEN CORPORATION) and MOLTEN U.S.A., INC.,

          Defendants.

No. C06-210MJP

ORDER DENYING MOTION FOR CONTEMPT BUT AMENDING PERMANENT INJUNCTION

      This matter comes before the Court on Plaintiff's motion for contempt. (Dkt. No. 379.) Baden argues that Defendants are attempting to circumvent the Court's permanent injunction, issued on October 2, 2007. (Dkt. No. 352.) Molten opposes the motion. (Dkt. No. 382.) Having considered the motion and response, Plaintiff's reply (Dkt. No. 384), all documents submitted in support thereof and the record herein, the Court DENIES Plaintiff's motion but AMENDS sua sponte the previously issued permanent injunction.

**Background**

      The parties and Court are familiar with the background of this case. Important to the Court's resolution of the issues presented in this motion are the Court's prior orders regarding Baden's claim that after Molten changed the design of its basketball sold in the United States, Molten continued to "offer to sell" its infringing basketballs to U.S. consumers. In its order granting in part and denying in part Baden's motion for summary judgment and denying Baden's request for injunctive relief, the

ORDER - 1

1  Court addressed Baden's "offer to sell" argument. (Dkt. No. 236, Order at 7-10.)  In that order, the

2  Court explained that although Molten could not be held liable for offers to sell infringing balls abroad,

3  "if Molten offers to sell infringing basketballs to U.S. consumers, even if the offer is made through a

4  foreign website, Molten has "offer[ed] to sell" an infringing product in violation of [35 U.S.C.] §

5  271(a)." (Id. at 9.)  After trial on Baden's patent and false advertising claims, the Court issued a

6  limited permanent injunction prohibiting Molten from, among other things, offering to sell into the

7  United States all basketballs utilizing the "dual cushion" technology claimed in Baden's '835 patent:

> IT IS FURTHER ORDERED that, pursuant to 35 U.S.C. § 283, Kabushiki Kaisha Molten (dba Molten Corporation) and Molten U.S.A., its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service, or otherwise, are hereby restrained and enjoined during the term of United States Patent No. 5,636,835 (the '835 patent) from making, using, offering to sell, selling, or importing into the United States (as defined in 35 U.S.C. § 271(a)) or causing to be made, used, offered for sale, or sold or imported into the United States all basketballs utilizing the "dual cushion" technology claimed in the '835 patent.

13  (Dkt. No. 348, Order at 5; Dkt. No. 352, Final Judgment and Limited Permanent Injunction.)  Baden

14  had also requested that the Court enjoin Molten's use of certain basketball model numbers, arguing

15  that consumers would not realize that basketballs sold in the United States with certain model

16  numbers have different internal technology than basketballs sold outside the United States with those

17  same model numbers.  The Court denied that request, reasoning that "there is little risk that

18  consumers will be deceived by the continued use of those model numbers." (Dkt. No. 348, Order at

19  4.)

20      Baden now offers copies of web pages from Molten Corporation's current "GL7" website,

21  www.molten-gl7.com, which includes a graphic depiction of the "dual cushion technology" that the

22  Court found to infringe Baden's patent.  As explained by Baden CEO Michael Schindler, the GL7

23  website does not indicate that "dual cushion" basketballs are unavailable in the United States:

> The website indicates that the same basketball models are sold everywhere in the world, including in the United States, without any design changes from one country to the next. The website indicates that Molten is selling the "dual cushion" basketball to major teams and tournaments around the world, including FIBA tournaments. I know that FIBA has tournaments in the United States. I know that the USA Basketball team (men

ORDER - 2

and women's Olympic team) would be considered a "major" team and it uses Molten's basketballs in the United States.

(Schindler Decl. ¶ 6.) The GL7 website is hosted by Molten in Japan and can be viewed in Japanese, Chinese, and English. (Hirata Decl. ¶ 4.) The GL7 website does not contain price information and does not have purchasing or ordering functions. (Id.) However, Molten game-quality basketballs, including a "GL7" basketball, continue to be sold in the United States, although apparently with different internal technology than the basketballs sold outside the United States. (Schindler Decl. ¶ 5; www.moltenusa.com (last visited January 28, 2008)).

Baden argues that Molten's GL7 website constitutes an offer to sell infringing basketballs to United States consumers in violation of this Court's permanent injunction. Baden asks that the Court order Molten to remove any reference to or illustration of "dual cushion technology" or, in the alternative, discontinue further use of Molten's "dual cushion" model numbers in the United States.

**Discussion**

"Civil contempt . . . consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." In re Dual-Deck Video Cassette Recorder Antitrust Litigation Go-Video Inc., 10 F.3d 693, 695 (9th Cir. 1993). The contempt need not be willful and a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the court's order. Reno Air Racing Ass'n v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006). "Substantial compliance with the court order is a defense to civil contempt, and is not vitiated by a few technical violations where every reasonable effort has been made to comply." Dual-Deck Video, 10 F.3d at 695. The party alleging civil contempt must demonstrate that the opposing party violated the court's order by clear and convincing evidence. Id.

Baden has failed to show with clear and convincing evidence that Molten violated the Court's permanent injunction. The Court's order prohibited Molten from "offering to sell . . . into the United States . . . all basketballs utilizing the 'dual cushion' technology claimed in the '835 patent." (See Dkt. No. 348, Order at 5.) Baden has not shown that Molten is offering to sell infringing balls

ORDER - 3

through its GL7 website. Molten is advertising its "dual cushion" GL7 basketball on the English version of its Japanese website, but Baden has not shown that the website contains pricing information or that consumers can purchase basketballs through that site.[1] See MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d 1369, 1376 (Fed. Cir. 2005) (holding that an offer to sell need not be formal, but must "communicate[] a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it"); 3D Systems, Inc. v. Aarotech Labs., Inc. 160 F.3d 1373, 1379 (Fed. Cir. 1998) (holding that because defendant's price quote letters contained a description of the allegedly infringing merchandise and the price at which it could be purchased, the letters were offers to sell); Biometrics v. New Womyn, 112 F. Supp. 2d 869, 873 (E.D. Mo. 2000) (concluding that a website that contains a detailed description of the allegedly infringing product and the product's price may constitute an offer to sell under 35 U.S.C. § 271(a)). (See Dkt. No. 236, Order at 7-8.) Based on the evidence provided, the Court is not convinced that Molten's GL7 website constitutes an offer to sell to United States consumers an infringing basketball. Because Baden has not shown that Molten defied the Court's prior orders, the motion for civil contempt is DENIED.

That said, the Court recognizes that the purpose of its injunction — preventing Molten from selling or offering to sell infringing "dual cushion technology" basketballs to United States consumers — is undermined by Molten's continued advertising of "dual cushion technology" basketballs on the English version of its website without actual acknowledgment that such basketballs are not available in the United States. When Congress amended § 271(a) of the Patent Act, one of its purposes was to prevent infringers from "generating interest in a potential infringing product to the commercial detriment of the rightful patentee." 3D Systems, 160 F.3d at 1379. That purpose is being underserved here. Consumers in the United States may purchase high-quality game balls, like the GL7 model ball, through the Molten USA website. But that website does not contain the detailed

---

[1] Baden points to a "Contact Us" link on Molten's GL7 website, but does not argue or present any evidence showing that the link functions as a way to purchase Molten's basketballs.

ORDER - 4

technical information about the internal construction of the basketballs that is available on the GL7 website. Baden contends that salespeople often point to websites in connection with offering products for sale, suggesting that Molten will also point potential U.S. consumers to the English version of its GL7 website. (Schindler Decl. ¶ 7.) Because, in some instances, the same basketball model numbers are used both inside and outside the United States, unless they are informed of the difference, purchasers will not know that the internal construction of the basketballs sold in the United States is different than that sold outside the United States. Consumers may actually believe they are purchasing a "dual cushion technology" basketball, even though the basketball that is delivered does not include that internal technology. Because potential U.S. consumers may look to the Molten GL7 website or other Molten Corporation websites or publications for technical information about their potential basketball purchases, those websites should inform consumers that the "dual cushion technology" basketballs are not available for purchase or use by United States consumers.

To that end, and in the exercise of its equitable powers, the Court AMENDS sua sponte its Order Regarding Request for Entry of Final Judgment and Permanent Injunction and Defendants' Request for Remedies-Specific Hearing (Dkt. No. 348) and the Court's Final Judgment and Limited Permanent Injunction (Dkt. No. 352). The third paragraph of the Final Judgment and Limited Permanent Injunction Order (and the identical language in the earlier order) will be amended to read as follows:

> IT IS FURTHER ORDERED that, pursuant to 35 U.S.C. § 283, Kabushiki Kaisha Molten (dba Molten Corporation) and Molten U.S.A., its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service, or otherwise, are hereby restrained and enjoined during the term of United States Patent No. 5,636,835 (the '835 patent) from making, using, offering to sell, selling, or importing into the United States (as defined in 35 U.S.C. § 271(a)) or causing to be made, used, offered for sale, or sold or imported into the United States all basketballs utilizing the "dual cushion" technology claimed in the '835 patent. Any English advertisement or promotion of "dual cushion" technology basketballs, whether through a website or written publication, must inform consumers that Molten basketballs employing "dual cushion" technology are not available in the United States.

ORDER - 5

1  Attorneys fees shall not be awarded.

2  The clerk is instructed to send copies of this order to all counsel of record.

3  Dated: January 29, 2008.

*/s/ Marsha J. Pechman*
Marsha J. Pechman
United States District Judge

ORDER - 6